Corkhill *v.* Landers.

───────── ● ● ● ─────────

## CORKHILL *vs.* LANDERS.

Where a boundary line is fixed and settled by parol agreement between A. & B., adjoining owners, and B. afterwards, with the knowledge of A., makes valuable and expensive improvements, relying upon such settlement, without any objection, or remonstrance, or notice of dissent from A. in regard to the line thus establshed, the latter is estopped from claiming that such was not the true boundary line between their respective lots.

If, under such circumstances, A. does not intend to be bound by the survey, and the line made and marked in his presence, by the surveyor called, with his assent, for that purpose, it is his duty to notify B., when he sees him erecting his wall, and making an addition to his house, in accordance with the line thus made.

To permit A., after the improvements are completed, to raise the objection and dispossess B. on the ground that the line was not in fact the true line, would be allowing him to take advantage of his own culpable neglect, to the great injury of B.

In such a case the principle of equitable estoppel applies.

The rule applies equally to transactions in regard to real and personal property. It does not at all touch the question of creating title to real estate by parol.

The principle is that he who is silent when conscience requires him to speak shall be debarred from speaking, when conscience requires him to be silent.

A defense of this kind may be set up in the action of ejectment.

Corkhill *v.* Landers.

THIS was an action to recover the possession of real estate. The complaint alleged that the plaintiff, on the thirteenth day of April, 1860, was and still is the owner in fee of the whole of lot No. 42 in the Atwater and Andrews tract, in the city of Rochester. That the defendant is now wrongfully in possession of a part of said lot, being a strip of land, four inches in width, bounded east by the east line of said lot, and running back from the front of said lot on Andrews street to the rear of the same, and has built a brick wall, being a part of the west wall of a dwelling house thereon, and wrongfully claims a right to said strip of land of the width aforesaid, and although requested so to do, he, the said defendant, has refused, and still does refuse to deliver the same to the plaintiff, or otherwise acknowledge the right of the plaintiff as such owner as aforesaid, and the plaintiff alleged that he had sustained damage by the withholding of said land by the defendant from him, in the sum of five hundred dollars. Wherefore the plaintiff prayed judgment that he recover against the defendant, the said strip of land ; and that the defendant deliver the same to him with the brick wall removed therefrom, and also for the said five hundred dollars damages so sustained by the plaintiff as aforesaid.

The answer was a general denial. The cause was tried at the Monroe circuit, in February, 1865, before Hon. E. Darwin Smith, justice, and a jury. The plaintiff was called as a witness on his own behalf, and proved by himself that he purchased and received a deed, from one Thomas Williams and wife, of lot 42, on the Atwater and Andrews tract ; said deed dated February 18, 1835, and recorded October 13, in the same year ; that he immediately entered in possession of said lot, and lived in a house thereon until the time of the trial ; that when he entered into possession of said lot, the said house was on it, and the lot was fenced all around ; that the lot was one hundred and thirty feet deep and sixty-six feet wide ; that on the east line of said lot was a high, tight board fence, consisting of unplaned boards, running from the

rear of said lot about 105 feet whence it was continued to the street by the west wall of a brown house, which stood upon lot 43, now owned or occupied by the defendant, its west wall serving as a fence of lot 42 ; that the face of said wall was on a straight line with the fence south of it ; that he, the plaintiff, had occupied said lot 42, claiming it as owner up to the high board fence, for twenty-seven years ; that the defendant, about thirteen years ago, purchased and entered into lot 43, on said Atwater and Andrews tract, being the lot adjoining lot 42 on the east, both said lots fronting on Andrews street ; that shortly after said defendant entered into possession of lot 43, he removed said brown house, but the rest of said fence remained ; there was a fence running across lot 42, in rear of the house, in which the plaintiff lived with his family, inclosing a garden in rear of said house. These facts were proved without contrary proof of any kind. The plaintiff then produced a map and gave evidence tending to show that in the year 1862 the defendant took down the west wall of his house standing on lot 43, and also a portion of said fence, and built up said wall, so that it stands, in the rear part of it, five inches west of the line of said fence, and six inches west of it in front ; said wall standing sixteen feet in length, an average of five inches and a half on the plaintiff's land, and that he, the defendant, had repeatedly attempted to build a fence between said wall and the street on the line of the face of said west wall continued, which the plaintiff had prevented. The defendant also gave evidence tending to show that the west wall aforesaid was not west of the west line of said fence ; that he had not removed any part of said fence to build said wall ; and that the same was not at all on any part of the land ever occupied by the plaintiff, but was wholly east of the line of the old fence. The plaintiff also gave evidence tending to show, by actual survey, that said wall was on the plaintiff's land, to the extent of five inches in the rear, and six inches in the front ; and the defendant gave evidence

Corkhill *v.* Landers.

tending to show that by actual survey the said wall was not on the plaintiff's land. The defendant also gave evidence tending to show a parol agreement as to the line. That evidence was as follows: The defendant Caleb M. Landers testified, on that subject, as follows: "I commenced to build the upright part of my house a year ago last spring; I then changed the plan of my house; the west wall of the rear part was built four feet from the line as I understood it, and in altering the building, I wished to increase the width of it, so as to get light into a bedroom from the front, and had to take all the land I had for the house." *Question.* "What, if anything, did you do to ascertain where the line was?" *Answer.* "I applied to Corkhill; I knew he had been disputing my right to what I had occupied all the time, and before I built, I applied to have a surveyor; I would like to know where the line was; he said he had no particular choice, and I asked him if he would be satisfied with Silas Cornell, and he said he would rather I would speak to him; and I told him I should go and get him, and in half an hour he would be there, and he must wait and investigate the matter with him; Mr. Cornell came and brought with him a copy of David Hudson's map and field notes, and proceeded to measure from St. Paul street and through to Franklin street, and then measured the length of Pleasant street; he was about two hours employed, and Corkhill saw what was done; he found a point on the platform of the well which, he said, was the true line there, and proceeded to indicate that point by taking a nail and driving it into the platform of the well; and said to Corkhill and me that that was the true line, and no proceedings of any kind could move the line from where he had fixed it; I had my cellar wall in the front part laid as high as I could get it on the other side, and was waiting to have the line established on the west side to build the west wall; I called the mason, and showed him the mark, and measured from that point myself three feet to the east, and one man who had the matter in charge, took the plumb

line, and plumbed down to find the inside of the cellar wall in front; Mr. Corkhill was there at the time; he turned and went away; I kept back in building the wall of the projection four inches to the east from the line Mr. Cornell gave us; Corkhill lived on lot 42 at the time, while I was building it; I heard no objection or remonstrance in any way, shape or manner, that I was getting on his land." The defendant then called Claflin W. Platt as a witness, who testified: "I helped about the job of building Mr. Landers' house on Andrews street; I saw Mr. Cornell, the surveyor, there; I remember seeing him, Corkhill and Landers surveying there at one time; I saw the surveyor measure the lot out, and give the line and drive a nail in the wall and into a post, and that was what I built the wall by." There was no other testimony as to any agreement to settle the line by survey. On this point Corkhill testified that he had no dispute with Landers while he was building the wall; the reason why he did not was that he had had so much dispute with him that he was tired. Here the testimony closed. The counsel for the plaintiff claimed to recover, on the ground, first, that he had shown that the plaintiff had occupied lot 42, up to the line of the fence more than twenty years, with claim of title, when the defendant took down the fence, and built his wall upon the land so occupied; and, secondly, that he had shown that the defendant had built said wall, five inches at one end and six at the other, west of the line which the plaintiff had shown to be the true line of the lot. The defendant claimed that the defendant had not built his wall, or any part thereof, west of what he had shown to be the true line of the lot 42, or west of the line of the fence; and thirdly, he claimed that the plaintiff, having assented to the calling of said Cornell to survey said lots 42 and 43, and fixed the true line between them, been present thereat, and having made no objection or remonstrance to the building of the wall on the line marked by the surveyor, he was estopped to deny that said wall was on the true line.

Corkhill *v.* Landers.

The court having charged the jury upon the other points in the case, proceeded upon the claim of estoppel thus; "The defendant, in his own testimony, says that before he made any erection or extended his building on this strip of land, by agreement with the plaintiff, he procured Mr. Cornell, the surveyor, to come to the ground and measure and mark the line, and lay it out, and fix it between them; and that Mr. Cornell came and laid out the line in their presence, and with the plaintiff's assent and concurrence; that does not change the rights of the parties, in regard to the actual line, because land can not be conveyed by parol; you might go and locate the lines of a lot, but nothing short of an acquiescence in the line thus located, for twenty years, would have any effect to change the true line. Real estate titles are too important to be changed by parol agreement, which may be sustained by false testimony. Therefore the law says that titles shall not be changed by parol agreement short of twenty years' acquiescence, and then you don't need any bargain. If you have acquiesced in the occupation of land for twenty years, you are precluded from afterwards questioning it. The statute comes in then, and declares the line to be established, and both shall abide by the agreement, after twenty years' acquiescence.

But you will meet with one more feature that arises in this case. If you believe that these two parties got together, and procured Mr. Cornell to come and make a survey of the line for the purpose of building upon it, and the defendant did, in pursuance of such agreement and with the knowledge and assent of the plaintiff, locate his building, and make valuable improvements, you will say that he is estopped from questioning it thereafter." To so much of the charge as is found from and including the above words, "If you believe" to and including the words "questioning it thereafter," the plaintiff's counsel excepted.

And the court proceeded, "A line may be run through your farm by your consent, and you will not be bound by it;

Corkhill *v.* Landers.

but if you allow another to put up a valuable erection on that line, and stand by while he is doing it, and make no objection, the law is, that you shall not object thereafter ; the law says, that you shall not be allowed to do your neighbor so much injury by allowing him to expend his money in putting up buildings upon a line, and then object to it. To all this charge after the words "bound by it," next following the last exception, the plaintiff's counsel excepted. And the court proceeded, "If the defendant, with the knowledge of the plaintiff and with his assent, moved his wall, and put it up on this spot, the plaintiff is precluded and estopped from denying that that is the true line." To which last proposition the plaintiff's counsel excepted. The court proceeded, "If there was no such agreement, that question is not in the case ; nothing short of an agreement or assent that is followed by an erection of valuable structures along the line can estop the plaintiff."

The jury found a verdict for the defendant, and the above exceptions were ordered to be heard in the first instance at the general term.

*H. Humphrey,* for the plaintiff. I. Twenty years' possession of lot 42, with claim of title under a deed of the lot, and with a board fence inclosure, was conclusive evidence of ownership to the line of the fence on the east. (2 *R. S.* 495, § 79, *4th ed.* 10 *John.* 338. 5 *Cowen,* 200. 16 *John.* 314. 15 *Wend.* 171. 7 *Cowen,* 637.) The above statute precluded a defense.

II. Nothing appearing in the evidence on the question of estoppel was sufficient to authorize the jury to find an estoppel, or the judge to intimate to them in his charge that they might find the plaintiff estopped to insist upon the fence as the true line. He was not estopped. (*Welland Canal Co.* v. *Hathaway,* 8 *Wend.* 480. *Dezell* v. *Odell,* 3 *Hill,* 215.) To be estopped he must have done or admitted something intentionally to mislead the defendant and must have misled him.

Corkhill *v.* Landers.

The defendant was misled only by his eagerness to possess what was not his.

III. The charge of the judge was erroneous, as overruling the cases of *Mumford* v. *Whitney,* 15 *Wend.* 380,) and *Miller* v. *Auburn and Syracuse R. R. Co.,* (6 *Hill,* 61,) and many modern cases there cited—also as assuming that there was any evidence of assent by Corkhill to a removal of his fence. (*Miller* v. *Auburn and Syracuse Rail Road Co.,* 6 *Hill,* 61. 15 *Wend.* 380. *Hewlins* v. *Shippam,* 5 *Barn. & Cress.* 221. 3 *Kent's Com.* 452. *Cook* v. *Stearns,* 11 *Mass. Rep.* 533.)

IV. The rule at law that an equitable defense shall not prevail in ejectment, has not been changed by the code, except upon condition that the defendant by his answer entitle himself to a specific performance, and claim and have judgment for such performance. (*Swick* v. *Sears,* 1 *Hill,* 17. *Code,* § 150, 2d clause. *Dewey* v. *Hoag,* 15 *Barb.* 365. *Haire* v. *Baker,* 1 *Seld.* 357.)

V. The fact that the evidence tending to show an estoppel was not objected to, does not prejudice the plaintiff. Estoppels are not pleaded, but are used as evidence to establish facts. (8 *Wend.* 480.)

*W. F. Cogswell,* for the defendant. I. There was no error in the charge of the judge, but the same was in strict accord with well settled principles of law. The doctrine of estoppel *in pais* is simply a doctrine of good faith, and is as applicable, and has been as readily applied, to real as personal property. It simply requires that when one has done an act, or made an admission upon which another relies and acts, he shall not be allowed to take back what he has done or said, to the prejudice of such other person. In the case in hand, the line between the parties' lots was a line which was not self demonstrative. It had to be ascertained in some way; and the only practical way was by a surveyor. The parties

agreed that Mr. Cornell should be the surveyor to ascertain it. This he did, and marked it on the ground, in the presence and with the acquiescence of both parties. After the line was so ascertained by the mutual agreement of the parties, the defendant with the plaintiff's knowledge, and without objection, erected his house in accordance with that line. The plaintiff can not now recover the possession of so much of the land as he claims is to the west of the true line. Good faith, as embodied in the doctrine of estoppel, forbids it. There are numerous authorities which directly or impliedly sanction this doctrine. (*Adams* v. *Rockwell,* 16 *Wend.* 285, 302. *Baldwin* v. *Brown,* 16 *N. Y. Rep.* 359, 317, 364. *Jackson* v. *Gardiner,* 8 *John.* 394, 406. *Laverty* v. *Moore,* 32 *Barb.* 347. *Foster* v. *Bass, MSS.*) It is very doubtful whether the learned judge did not go further in favor of the plaintiff than the law would warrant. It is by no means clear that a settlement by agreement of the parties of a doubtful boundary, especially when possession is taken corresponding to such agreement, is not binding. (*See cases cited in opinion of Senator Maison, in Adams v. Rockwell.*) Nor does this class of cases conflict in the least with the case of *Eggleston* v. *The N. Y. and Harlem R. R.* (35 *Barb.* 162.) It is one thing to attempt to work a conveyance of land confessedly the land of the plaintiff, by showing that the defendant has entered upon it and made improvements, and a very different thing to say that the plaintiff shall not be allowed to disturb a boundary theretofore undetermined, which the plaintiff and defendant have fixed by agreement, and which when so fixed the defendant has built upon as the boundary, claiming it as such, and the plaintiff assenting to such claim. In the former case the elements of an estoppel are wanting. The distinction is well pointed out by Judge Emott at page 172 of the case above cited.

II. The selection by the parties of an indifferent person to fix and determine the line, and his determination accordingly, was a submission of the same to arbitration and an award

Corkhill *v.* Landers.

thereon. Such submission and award are not within the statute relative to arbitration, prohibiting the submission of certain questions to arbitration, and are valid although by parol. (*Robertson* v. *McNeil,* 12 *Wend.* 578, 583. *Jackson* v. *Gager,* 5 *Cowen,* 383. 2 *Kern.* 266. 4 *id.* 143.) This proposition is embraced in the case as presented, because it was submitted to the jury to find whether Cornell had, in pursuance of the agreement of the parties, established the line, and whether if he did, the defendant built his house in reference to that line with the knowledge and assent of the plaintiff. The former part of the proposition was necessarily established by the verdict, if the case was decided against the plaintiff, on that branch of the charge excepted against. If it was on any other branch, there was no complaint that it was not properly submitted. (6 *Ad. & Ellis,* 499. 4 *Hurlst. & Norm.* 549. 2 *Exch. R.* 654. 10 *Ad. & Ellis,* 97.)

*By the Court,* JOHNSON, J. The exceptions to the judge's charge to the jury are not well taken. If the disputed boundary line had been fixed and settled by agreement between the parties, as the jury by their verdict have found the fact to be, and the defendant went on with the knowledge of the plaintiff, afterwards, and made valuable and expensive improvements relying upon such settlement, without any objection or remonstrance, or notice of dissent from the plaintiff in regard to such line, thus established, he is clearly estopped from now claiming that such was not the true boundary line between their respective lots. If he did not intend to be bound by the survey and the line made and marked in his presence by the surveyor called with his assent for that purpose, it was his clear duty to notify the defendant when he saw him erecting his wall, and making the addition to his house, in accordance with the line thus made. He is presumed to have known that the defendant was making the improvement in the faith that he acquiesced in the line fixed by the sur-

veyor in his presence, and without any dissent from him at the time. To allow him now, after the improvements are completed, to raise the objection and dispossess the defendant on the ground that the line was not in fact the true line, would be allowing him to take advantage of his own culpable neglect, to the great injury of the defendant. By his silence he must be deemed to have consented to the improvement being made and placed as it was, and to have encouraged and sanctioned the expenditure necessary thereto. Knowing that the defendant claimed the land to the new line, he by his silence assented to the claim while the improvement was going on, and until it was too late for him to raise the objection. It is just the case where the principle of equitable estoppel applies. (*Wendell* v. *Van Rensselaer*, 1 *John. Ch.* 343. *Town* v. *Needham*, 3 *Paige*, 545. *Thompson* v. *Blanchard*, 4 *Comst.* 303. *Baldwin* v. *Brown*, 16 *N. Y. Rep.* 359.) In the last case Selden, J. at page 364, says: " There may be cases in which an express agreement recognizing an erroneous boundary will conclude a party; as where the other party acting upon the faith of such agreement has made expensive improvements, the benefit of which will be lost to him if the line is disturbed." Such cases, the learned judge proceeds to say, rest upon the principle of estoppel *in pais*. The cases upon this subject are very numerous in the books, but it is unnecessary to multiply citations, as the principle is very clearly established. The rule applies equally to transactions in regard to real and personal property. It does not at all touch the question of creating title to real estate by parol. It estops a party from asserting his title when it would be fraudulent, and operate injuriously to allow him to do so. The principle is that he who is silent when conscience requires him to speak, shall be debarred from speaking when conscience requires him to be silent. There can be no doubt, I think, that a defense of this kind may be set up in the action of ejectment.

A mere equitable defense may be interposed in this action, since the code. (*Crary* v. *Goodman*, 2 *N. Y. Rep.* 266.) A new trial must therefore be denied.

[Monroe General Term, September 5, 1865. *Johnson, E. Darwin Smith* and *James C. Smith*, Justices.]