MATTHEW DOLDE, Respondent, *v.* VENZEL VODICKA, Appellant.

1. *Deed — Reference to survey in — Effect of.*—Where no other description is given of the land sold than by the number of the lot in the survey of a tract of land or the plan of a town or an addition to the same, the authentic map of such survey is as much a part of the deed as though set out in it.

2. *Estoppel* in pais — *Boundary line — Improvement, acquiescence in.*—Without any agreement more than is implied from their acts, if two persons trace their dividing line, and both recognizing it as such, one goes forward with the knowledge and acquiescence of the other, and makes valuable improvements, so valuable as to work great injury to the party making them if the line be disturbed, the other will be estopped from afterward alleging such mistake as shall deprive the builder of his improvements; and especially if the party seeking to disturb the line knew at the time the improvements were made, all that he subsequently learned, or if he had the means of knowledge. In such case it is not necessary to show actual fraud in the party estopped.

*Appeal from St. Louis Circuit Court.*

*Geo. P. Strong*, for appellant.

*E. C. Kehr*, for respondent.

BLISS, Judge, delivered the opinion of the court.

This is an action of ejectment to recover a strip of eight and a half feet, alleged to be a part of lot No. 11, in block 2, of the Arsenal addition to the city of St. Louis, and the true location of the division line between lots 11 and 12 is the matter in dispute. The east half of said block 2 fronts upon Carondelet avenue on the east, and consists of seventeen lots, commencing with No. 1, on the corner of Gate street and the avenue, and running north to Arsenal street. Gate street runs at right angles with the avenue, and Arsenal street deflects southwardly from it, making the northeast corner of lot 17 an acute angle. Both plaintiff and defendant purchased their lots of one Joseph Ledue,

and took possession as they now occupy, both parties, as well as their grantor, supposing the line now claimed by defendant to be the true one. Both deeds from Ledue describe the lots respectively by their numbers, " according to the plat of the addition on file," etc. But in surveying the block there is found to be a deficiency north, of eight and a half feet, the actual measurement falling so far short of the distance called for by the plat or map. The evidence makes it quite probable, if not certain, that the mistake is in the map, and in entering upon it the front width of lot 17. All the lots except that are 25 feet wide, and that is entered as having a front of $32\frac{5}{12}$ feet, which is claimed to be some eight and a half feet too much. In commencing upon Arsenal street and running south, giving each lot the width called for, the division line between the parties is found to be where both have hitherto considered it, and to which both have built and occupied; to commence upon Gate street, however, and run north, giving the lots their record width, the division line is wrong, and should be the distance north claimed by the plaintiff. Conceding that the mistake was in the map, and that it arose from the supposed mistake in entering the front width of lot 17, the other facts are undisputed. All the lots from 9 to 17 were taken possession of according to the width named in the plan. The whole front of lot 17 had been covered with a brick building for more than twenty years before the trial. Lot 16 had also been built upon. Lot 13 was owned by defendant, had been inclosed, and ever since 1856 a frame house had stood upon it; and up to its south line. In 1863 defendant bought lot 12, and covered its whole front with a brick building, and soon after the plaintiff purchased lot 11, upon which he erected a building, joining that of the defendant. He also owns lots 9 and 10, and occupies the whole of those according to the distances laid down from Arsenal street. So we find that all the owners of lots, in the north part at least, if not throughout the block, including both the parties to this suit, have received their deeds according to this plan, measuring from the north, have occupied and improved their lots, holding according to these measurements, and some of them for a period that would give them a title under the statute of

limitations. And, further, it appears that when these litigants purchased lots 11 and 12 they were surveyed and staked off by their vendor, precisely as they have ever since been occupied, so that possession was delivered as was contemplated by their respective deeds. Mr. Cozzens, a surveyor of great experience, also testifies that in running out these lots he found surveyor's marks upon the curb-stone opposite their boundary, indicating the location of their dividing lines, precisely as occupied by the owners.

It is undisputed that where no other description is given of lands sold than by number of the lot in a survey of a tract of land or the plan of a town or an addition to the same, the authentic map of such survey is as much a part of the deed as though set out in it. The plan of this addition was duly certified and recorded under the statute, and everything in it may be treated as in the deeds to both the parties.

This is not the case, which so commonly occurs, of a discrepancy between the calls of the deed in course and distance, and the course and distance of the line as actually run; nor does any mistake appear in the original survey of the block, for it is assumed that the surveyor only ran out the external boundary, being the lines of the streets and alleys, without measuring and staking out the separate lots, although they are all marked upon the surveyor's maps, with the size of each. Had this been so staked out in the original survey, there would be no difficulty, for the division of the lines of the lots would then have been actually located, and the location must govern. The mistake was in assuming that the east half of block 2 was sufficiently broad upon Carondelet avenue to contain sixteen lots 25 feet wide, and one with a front of $32\frac{1}{2}$ feet, and so entering them upon the map, when it lacked eight and a half feet of being sufficiently wide to embrace so much land. Without saying whether the division line to which the parties occupied, and supposed they had purchased, is the true one, the case can be disposed of upon another principle.

This is a case of an agreed division line, with subsequent improvement, and the doctrine of estoppel *in pais* will apply to it. The parties both took their lots by number, which were staked

Dolde v. Vodicka.

out to them by the seller. No new facts have been discovered; the plaintiff could have known everything he knows now; he recognized the line to which defendant occupied as the true one, stood by and saw him erect a brick building up to it without objection, and without making any claim to the land covered by the building, and afterward built up to the same line himself. Without any agreement more than is implied by the acts of the parties, if they trace their line, and both recognizing it as such, one shall go forward, with the knowledge and acquiescence of the other, and make valuable improvements, so valuable as to work great injury to the party making them if the line be disturbed, the other is estopped from afterward alleging such mistake in the line as shall deprive him of his improvements. This is especially true where the party seeking to disturb the line knew at the time the improvements were made all he has subsequently learned, or had in his hands the means of knowledge. The kind of possession necessary to give title under the statute of limitations is not necessary to be considered; and though the decisions in regard to estoppel *in pais*, in cases of this kind, are not entirely harmonious, yet the doctrine as here announced is founded in equity and cannot be controverted in principle. In Massachusetts it seems to be held otherwise (Brown v. B. & W. R.R. Co., 5 Metc. 478; Proprietors, etc., v. Prescott, 7 Allen, 494); but it seems to me that the doctrine held in New York, and by this court in Taylor *et al.* v. Zepp, 14 Mo. 482, and in Blair v. Smith, 16 Mo. 273, is the more reasonable one.

It is not the agreement alone that can protect defendant, for that is contrary to the statute of frauds, but the reliance upon such agreement, or the conduct of the plaintiff amounting to one — his express recognition of the line and acquiescence in the possession and improvement, upon which the person making them had a right to rely, and from the loss of which he would suffer great damage — that should estop him from seeking to establish a new line, although the true one, by which he would himself obtain such improvements or render them valueless to the other party. In the language of Johnson, J., in Corkhill v. Landers, 44 Barb. 218, the present plaintiff " by his silence must be deemed to have consented

to the improvement being made and placed as it was, and to have encouraged and sanctioned the expenditure necessary thereto," and therefore is estopped from saying that they are upon his lot. See also remarks of Walworth, chancellor, in Adams v. Rockwell, 16 Wend. 302–3, quoted in Taylor *et al.* v. Zepp; also see Laverty v. Moore, 32 Barb. 347.

The well-considered case of Taylor *et al.* v. Zepp, and its affirmance by other cases, places the doctrine of estoppel in regard to division lines upon a more satisfactory basis than that upon which it rests in some of the States. The element of actual fraud need not enter into it; it is rather based upon the substantial injury to the other party, which is an essential element of estoppel. This view was held in Rutherford v. Tracy, 48 Mo. 325.

This does not come within the class of cases where acquiescence for many years is held to be conclusive evidence of the true boundary line (Baldwin v. Brown, 16 N. Y. 359; Reed v. Farr, 35 N. Y. 113), for such acquiescence has nothing to do with the doctrine under consideration, and the distinction is recognized in Baldwin v. Brown; nor, for the same reason, does the view here taken conflict with Knowlton v. Smith, 36 Mo. 507, nor Thomas v. Babb, 45 Mo. 384. In the last case improvements were spoken of, but they were inexpensive; but if, under the facts in relation to the line, the defendant had erected the house upon the strip of land in dispute, the doctrine of estoppel should have protected him.

I have purposely refrained from commenting upon the pleadings and instructions in this case. Yielding all that the plaintiff claims in regard to the mistake and its character, the facts show that the plaintiff ought not to have judgment. It would be wrong, therefore, even if we could find error, to reverse the judgment and put the parties to the expense of a new trial.

The other judges concurring, the judgment of the General Term will be reversed and the judgment of the Special Term affirmed.