BROYLES, *et ux., v.* NOWLIN, *et al.*

1. ESTOPPEL. *Dower.* Where a party in interest had notice of dower proceedings, and failed at the time to object, but afterwards, for a series of years openly recognized the widow's right of dower, until the sale of the property, when it was purchased for a less sum than its value, on account of the dower incumbrance by such person, this will be an estoppel in a proceeding to oust the widow of her rights by the purchaser.

Case cited: 44 Barb., 218.

2. SAME. *Guardian. Trustee. Resulting trust.* The question of a resulting trust, created by the use of wards money and dower interest growing out of the same, discussed.

Cases cited: Gannaway *v.* Tarpley, 1 Cold., 572; Tarpley *v.* Gannaway, 2 Cold., 246.

FROM WHITE.

Appeal from the Chancery Court. W. W. GOODPASTURE, Chancellor.

JOHN H. SAVAGE for Broyles, *et ux.*

S. COLMS for Nowlin, *et al.*

SNEED, J., delivered the opinion of the Court.

The only question for determination in this case is, whether the defendant, Mary A. E. Nowlin, as widow of A. S. Nowlin, is entitled to hold the dower interest already allotted to her in the lands in controversy as against the complainants. The record is voluminous, and involves many other questions, but no complaint is made of the decree below, except so much of it as reaffirms the action of the County Court in assigning dower to said widow. A. S. Nowlin died in the occupancy of the land in 1861, and dower was assigned the widow in June of that year, and she has been in possession of the dower premises ever since, under the decree of the County Court of White County. This bill was filed by one of the daughters of A. S. Nowlin, deceased, and her husband, in September, 1867, attacking the widow's right to dower, and seeking to dispossess her. It seems that the widow is the second wife of A. S. Nowlin, deceased, and the complainant Susan W. Broyles, is the daughter of the former marriage. A. S. Nowlin was the guardian of the complainant Susan, and his other children of the first marriage, and invested their money in the land in question, so that the greater part of the purchase money was paid out of these funds. After his death a balance was still due on the purchase. The estate after the war proved insolvent, and the administrator Dibrell brought his insolvent bill for its settlement in the Chancery Court. The children of A. S. Nowlin, who were his wards while he lived, brought this bill against the sureties on his guardian bond to com-

pel an account of the moneys so invested in the lands, and these sureties filed their bill to have themselves indemnified out of the land so bought; whereupon the Clerk and Master who holds the note of A. S. Nowlin, for the unpaid balance of the purchase money, filed a bill to enforce the vendor's lien for said balance. Matters were thus complicated, when the complainant Susan, then unmarried, and her brothers, the other wards, *all sui juris,* came to a compromise with the other parties, by which it was agreed that the land should be sold, and that they would become bidders at a minimum bid sufficient to cover the indebtedness due to them from their deceased father, and also the sum of $1,800, the balance of purchase money still due, and if the land should bring more at the sale, the surplus should go to the general creditors of their father's estate.

This compromise agreement was embodied into the decree of the Court, and the sale was had accordingly, the land being struck of to the complainant, Susan, and her brothers, at the first and minimum bid. The sale was confirmed, and the land partitioned and the complainant Susan having intermarried with the co-complainant Broyles, brought this bill ·for divers purposes, the chief of which is to oust the defendant, Mary, of the dower estate vested in her by the decree of the County Court, some six or seven years before. It has been held that when the husband who was guardian, bought land with the money of his ward, taking the title in his own name, his widow

13—vol. 3.

was not dowable of such land as against the wards. *Gannaway* v. *Tarpley*, 1 Cold., 572. But if the land was bought in part with the husband's money, the widow would be dowable out of any surplus that might remain after sale, and satisfaction rendered to the wards, 2 Cold., 246. It does not satisfactorily appear in this case precisely in what proportions the land was paid for out of the trust funds and the private funds, but it is certain that the bulk of the purchase money was paid out of the trust fund. We think, however, that the rights of these parties must be determined upon other grounds than the mere effect of the investment of the trust monies by the guardian.

The proceedings of the County Court in the dower proceeding are inartificial and imperfect, but enough appears to show that the Statute was substantially complied with, and we have been often admonished that the Statutes on this subject must be construed with an enlarged liberality. In the proceedings, the parties defendant, except the administrator are not named, but the caption refers to defendants as G. G. Dibrell, administrator, and others, and the decree assumes that the defendants had notice of the dower proceeding, and no contest or controversy was had. But in addition to this, it does affirmatively appear that the complainant for a series of years openly recognized the widow's right of dower, and this recognition continued to the moment when she bid for and bought the land, which she avowedly bought subject to the widow's dower,

paying some $2,753 00 less for it, than it was esti-
mated by the parties to be worth on account of the
conceded incumbrance of the widow's dower.    The
complainant has thus taken a great advantage by her
concession, and she will not be heard to gainsay it
at this late day.

It is said that the proof is not sufficient to pre-
dicate an estoppel.    " He who is silent when con-
science requires him to speak, shall be debarred from
speaking when conscience requires him to be silent."
44 Barb., 218.

This is an estoppel, and this is the condition in
which the proof places this complainant.    It seems
that the parties valued the land in controversy at $10,000,
but subject to the widow's dower, they were permitted
to bid without opposition $7,247 00 for the land.    The
administrator testifies that he often heard complainant,
both before and after her marriage concede the widow's
right to the dower, and that he had heard complainant
concede it since they bought the land, and it was well
understood by them, and among them, that they were
buying subject to the dower interest; others testify to
the same effect.    The complainant even spoke of buying
out the widow's interest, and thus extinguish the dower.
Besides all this, the dower right is expressly recognized
in the consent decree of 20th September, 1867, appoint-
ing a receiver to rent out the land.    Under these cir-
cumstances we must hold the complainant estopped to
dispute the widow's right at this late day.    The Chan-
cellor took this view of it, and we affirm his decree.