THE ST. VINCENT FEMALE ORPHAN ASYLUM OF THE CITY OF TROY, RESPONDENT, v. THE CITY OF TROY, APPELLANT.

*Abandonment of a portion of a street — power of municipal corporation — estoppel — Non-user of easement for twenty years.*

The common council of the city of Troy, under the authority given to it to ascertain, fix, establish and settle the boundaries of all streets, may so establish the boundaries as, in effect, to abandon a portion of the pre-existing street lying outside thereof; and where an adjacent owner makes substantial improvements upon the portion of the street so abandoned, the city is estopped from setting up any claim thereto.

A mere non-user of an easement for twenty years, will be deemed an abandonment of it.

APPEAL from a judgment in favor of the plaintiff entered upon a verdict directed by the court, and from an order denying a motion for a new trial.

*R. A. Parmenter*, for the appellant.

*O. A. Martin*, for the respondent.

BOCKES, J.:

In 1853, Peter Havermans owned and was in possession of a lot on the south-east corner of Washington and Hill streets, in the city of Troy, which lot was bounded north by Washington street and west by Hill street. The plaintiff succeeded to his title. On the 24th of August, 1853, the common council of the city of Troy adopted and placed on record a resolution reducing the width of Hill street southerly from Washington street, to forty feet, and directed the excess beyond forty feet to be laid off on the east side of the street; and further declared that the Troy hospital, which then stood on the adjacent lot, was at liberty to enclose that excess within its grounds for the use of that institution. In pursuance of that resolution the east line of Hill street was immediately fixed and determined by the city surveyor, leaving the street forty feet wide; and the lot on the east side was from that time occupied and improvements were made with a view to such designation of the street line; and a heavy and permanent wall was built along the line so designated, and such wall was maintained by Havermans and those holding under him until April, 1874, when the city authorities commenced its removal. Thereupon this action was brought on the hypothesis that such action by the city authorities was wrongful. On the trial the learned judge ruled in favor of the plaintiff, and directed a verdict against the defendant for nominal damages.

Prior to and until 1853, the public had an easement over the strip of land on the west side of the plaintiff's lot, lying east of the line fixed by the resolution of August twenty-fourth of that year. This strip was within the line of the public highway. By that resolution it was intended to surrender the public right, which was merely an easement. It is not pretended that the city had any title to the strip, or any other right to it than such as pertained to it as part and parcel of the public highway. The fee was in the owner of the lot, which, by the express terms of the conveyance, was bounded on the west by the street. It will be seen by reference to the resolution that it was intended thereby to surrender the right of way held by the public over this strip of land in dispute. The language of the resolution is, " that Hill street * * * be reduced to forty feet in width," and it further provides

that the excess beyond forty feet be laid off on its east side. This action of the common council was taken under the provision of the city charter which authorized that body to ascertain, fix, establish and settle the boundaries of all streets, alleys and lots in the city. In fixing, establishing and setting the line of Hill street, the common council was acting within the powers conferred by law on that body. Such action was more than the granting of a mere *revocable license* to the Troy hospital to use the land. The common council had no authority to license the public highway for private use; but it might fix, establish and settle the boundary of a street, which would in effect be a surrender of the easement, an abandonment of the public use or right of way over the adjacent lands not embraced within the boundary line fixed and established by its authorized action. Such abandonment or surrender of the public use would inure to the benefit of the owner of the adjacent lot bounded by the street. It seems, then, that the public, acting through the common council, its lawful agent in that behalf, relinquished and abandoned its right of way over the piece of land to the line of the street as fixed and established by that body in 1853, and that the plaintiff and its predecessors in title held the land to such line against the public from that time forward, being a period of over twenty-years, asserting at all times full and absolute title thereto, and manifesting its claim of absolute right by making substantial and permanent improvements thereon. A mere non-user of an easement for twenty years will be deemed an abandonment of it. (*Corning* v. *Gould*, 16 Wend., 531.) But here was more than simple non-user. There was an express surrender or relinquishment of it with non-user pursuant to such surrender, for a period exceeding twenty years. Again, the evidence was here sufficient to establish an estoppel against the defendant's claim of right beyond the boundary of that street, fixed and settled by its action in 1853. The common council had determined the line of the street by the resolution of August twenty-fourth of that year. It had been made certain and definite on the ground by the city surveyor. The owner of the lot took immediate possession, and such owner and those who succeeded to him in title, made permanent improvements thereon, on the faith of such action. The doctrine of estoppel *in pais* applies to such a

case. (*Corkhill* v. *Landers*, 44 Barb., 218.) The learned judge was right, therefore, in holding that the defendant was concluded by the resolution of August 24th, 1853, followed as it was by actual and continued occupation under claim of absolute right, especially in view of the improvements made on the faith of the action of the common council.

It is insisted, however, that there was a question of fact for the jury, on the evidence as to the location of the wall; whether or not it was erected on the line of the street, as fixed and established by the city surveyor, pursuant to the resolution of August 24th, 1853. It is well proved that possession was taken immediately after the resolution was adopted by the common council, and it seems also well established by the evidence that such possession was limited by the line fixed by the city surveyor on the east boundary of the street. Indeed, a careful examination of the testimony makes the case clear and without conflict on this point. Some confusion arose from the fact, that there was an old fence erected about the time the hospital was built in 1849. This old fence was some ten feet east of the line along which the wall was constructed. But all the evidence goes to establish, and does unquestionably establish the fact, that the wall was built along the line of the street, located and settled by the city surveyor in pursuance of the resolution of August 24, 1853.

There was manifestly no question of fact in the case for the jury.

The motion for a new trial on the minutes of the court was properly denied, and the order and judgment appealed from should be affirmed with costs.

BOARDMAN, J., concurred.

LEARNED, P. J. (dissenting):

I think that the question of actual possession is not free from doubt, upon the evidence. According to the testimony of some witnesses, the wall was several feet further west than the fence had been. If the question of possession be material, there was conflicting testimony on the point how far westward that possession had extended; that is, on the point whether the plaintiff had been in possession as far westward as the present wall, at any time prior to

its erection.  Because the possession of the plaintiffs, prior to the erection of the wall, had extended only as far as the fence    And the witnesses disagreed on the point whether the wall stands where previously the fence had stood.

I cannot, therefore, concur.

Judgment and order affirmed, with costs.