108   197
140   680

[No. 19470.   Department One.—July 20, 1895.]

## JULIA V. STEWART, APPELLANT, v. JOHN W. SEFTON, RESPONDENT.

TRESPASS—REMOVAL OF TREES—TREBLE DAMAGES.—To entitle a plaintiff who complains of the unlawful removal of trees from his land to treble damages, under section 733 of the Code of Civil Procedure, he must allege and prove that the defendant willfully and maliciously removed the trees knowing them to be his property.

ID. — REMOVAL OF TREES PLANTED IN GOOD FAITH — MISTAKE AS TO DIVISION LINE — ACQUIESCENCE — ESTOPPEL — DAMAGES.—Where the trees removed by the defendant were planted and cultivated while the defendant was in the actual and exclusive possession of the land, through an innocent mistake as to the true location of a division line between his land and that of the plaintiff, growing out of the mistake of a surveyor in locating the line, whose survey was accepted and acquiesced in by the plaintiff until after discovery of the mistake, the plaintiff is estopped from claiming that the trees were any part of plaintiff's estate in the land, and he cannot, by protest, prevent the removal of the trees by the defendant while still in possession of the land before it is delivered up to plaintiff, nor can plaintiff claim any actual damages in consequence of their removal by the defendant.

ID.—NOMINAL DAMAGE.—In actions ex delicto nominal damages are often given, though no actual damage has been suffered; but a judgment for nominal damage is justified only on the ground that it can conserve some right of the plaintiff which has been nominally infringed, and which might be lost by acquiescence and lapse of time, and such judgment is not required where no right or title of the plaintiff is jeopardized.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial.   E. S. TORRANCE, Judge.

The facts are stated in the opinion.

*Sweet, Sloane & Kirby,* for Appellant.

The trees became a part of the freehold and were the property of the plaintiff, there being no agreement that defendant might remove them. (Civ. Code, sec. 1013; *United States* v. *Land in Monterey County,* 47 Cal. 516; *Poor* v. *Oakman,* 104 Mass. 318; *Webster* v. *Potter,* 105 Mass. 416; *First Parish etc.* v. *Jones,* 8 Cush. 184; *West* v. *Stewart,* 7 Pa. St. 122; *Hunt* v. *Bay State Iron. Co.,* 97 Mass. 279; *Oakman* v. *Dorchester etc. Ins. Co.,* 98 Mass. 57.) Ignorance of title or mistake does not alter the rule that the improvements are part of the realty, and cannot be removed. (1 Washburn on Real Property, 8; *Seymour* v. *Watson,* 5 Blackf. 555; 36 Am. Dec. 556; *Blair* v. *Worley,* 1 Scam. 178; *Kimball* v. *Adams,* 52 Wis. 554; Ewell on Fixtures, 64; *Rasor* v. *Qualls,* 4 Blackf. 286; 30 Am. Dec. 658; *Collins* v. *Bartlett,* 44 Cal. 371; *Atchison etc. R. R. Co.* v. *Morgan,* 42 Kan. 23; 16 Am. St. Rep. 471.) Full knowledge of facts is essential to an estoppel. (1 Rapalje's Law Dictionary, 16; *Scott* v. *Jackson,* 89 Cal. 258; Code Civ. Proc., sec. 1692, subd. 3.) The party claiming the benefit of the estoppel must be ignorant of his legal rights, and have no means of acquiring knowledge. (*Lux* v. *Haggin,* 69 Cal. 255; *Biddle Boggs* v. *Merced etc. Co.,* 14 Cal. 279; *Stockman* v. *Riverside etc. Co.,* 64 Cal. 57.) Plaintiff may maintain the statutory action given to the owner of the land, and adverse possession could not defeat the right. (*Barnes* v. *Jones,* 51 Cal. 305; Code Civ. Proc. 733; Pomeroy's Remedies, sec. 232; *Brown* v. *Bridges,* 31 Iowa, 138; *Fitch* v. *Gosser,* 54 Mo. 267; *Adams* v. *Farr,* 5 N. Y. Suprm. Ct. 59; 2 Hun, 473; *Robinson* v. *Wheeler,* 25 N. Y. 252; *Oregon etc. R. R. Co.* v. *Jackson,* 21 Or. 360; *Allison* v. *Little,* 93 Ala. 150; *Meehan* v. *Edwards,* 92 Ky. 574; *Arn.* v. *Matthews,* 39 Kan. 272.) The assertion of ownership and possession by the plaintiff before removal of the trees made their removal unlawful, and the adverse possession was terminated by recognition of plaintiff's title and the assertion of plaintiff's rights. (*Peabody* v. *Hew-*

*ett,* 52 Me. 33; 83 Am. Dec. 486, and note, 497; *Trotter* v.
*Cassady,* 13 Am. Dec. 185 (note). · See note to *Anderson*
v. *Hapler,* 85 Am. Dec. 324; 2 Wood on Limitations of
Actions, sec. 270; *Brickett* v. *Spofford,* 14 Gray, 514;
*Oakes* v. *Marcy,* 10 Pick. 195; *Knox* v. *Jenks,* 7 Mass.
488; *City of San Jose* v. *Trimble,* 41 Cal. 536; Tyler on
Ejectment, 907, 908, 910.)

E. W. *Britt,* for Respondent.

The finding of adverse possession by defendant estab-
lished disseisin of plaintiff. (*Unger* v. *Mooney,* 63 Cal.
590, 591; 49 Am. Rep. 100; Tyler on Ejectment, 84; 1
Washburn on Real Property, 5th ed., 82.) Disseisin
has the properties of rightful possession until the wrong
is repaired by the reinvestiture of the owner, and the
disseisee cannot sue for injuries to the freehold while
dispossessed. (*M'Call* v. *Neely,* 3 Watts, 71; Cooley on
Torts, 2d ed., 383, note 1; *Rowland* v. *Rowland,* 8 Ohio,
40; *Allen* v. *Thayer,* 17 Mass. 299; *Bigelow* v. *Jones,* 10
Pick. 163; *Blood* v. *Wood,* 1 Met. 533; *Wood* v. *Lafayette,* 68
N. Y. 190; *Gillespie* v. *Dew,* 1 Stew. 229; 18 Am. Dec. 42;
*Rogers* v. *Duhart,* 97 Cal. 505, 506; *Raffetto* v. *Fiori,* 50
Cal. 363; *Felton* v. *Justice,* 51 Cal. 529; *Uttendorffer* v.
*Saegers,* 50 Cal. 496; *Heilbron* v. *Heinlen,* 72 Cal. 371;
*Pennybecker* v. *McDougal,* 46 Cal. 661; *Smith* v. *Cunning-
ham,* 67 Cal. 262; *Martin* v. *Thompson,* 62 Cal. 618; 45
Am. Rep. 663; *Page* v. *Fowler,* 39 Cal. 412; 2 Am. Rep.
462; *King* v. *Baker,* 25 Pa. St. 188.) The question of
adverse possession at the time of the removal of the
trees was a question of fact to be determined by the
trial court. (*Alvarado* v. *Nordholt,* 95 Cal. 116; *Cannon*
v. *Stockmon,* 36 Cal. 539; 95 Am. Dec. 205; note to *Pea-
body* v. *Hewett,* 83 Am. Dec. 500, and cases cited.) The
facts sustain the finding of adverse possession. (Code
Civ. Proc. 323, 325; *Grimm* v. *Curley,* 43 Cal. 250; *Whit-
man* v. *Steiger,* 46 Cal. 258; *Johnson* v. *Brown,* 63 Cal.
391; *Brown* v. *Bridges,* 31 Iowa, 141; *Ramsey* v. *Glenny,*
45 Min. 401; 22 Am. St. Rep. 736; *Edridge* v. *Kenning,*
12 N. Y. Supp. 693; affirmed 129 N. Y. 625; *French* v.

*Pearce,* 8 Conn. 439; 21 Am. Dec. 680; *McNamara* v. *Seaton,* 82 Ill. 501; *Caufield* v. *Clark,* 17 Or. 473; 11 Am. St. Rep. 845; *Zorn* v. *Haake,* 27 N. Y. Supp. 40; *Yetzer* v. *Thoman,* 17 Ohio St. 133; 91 Am. Dec. 122.) Plaintiff is estopped by acquiescence from objecting to a removal of the improvements. (*Dolde* v. *Vodicka,* 49 Mo. 98; *Helm* v. *Wilson,* 76 Cal. 477, 486; *Taylor* v. *Zepp,* 14 Mo. 482; 55 Am. Dec. 113; *Laverty* v. *Moore,* 32 Barb. 347, 350, 351; affirmed 33 N. Y. 658; *Cavanaugh* v. *Jackson,* 91 Cal. 583; *Major* v. *Rice,* 57 Mo. 389; *Joyce* v. *Williams,* 26 Mich. 338, 339; *Truesdail* v. *Ward,* 24 Mich. 134, 135; *Corkhill* v. *Landers,* 44 Barb. 228; *McKelway* v. *Armour,* 10 N. J. Eq. 115; 64 Am. Dec. 445; *Moyle* v. *Connolly,* 50 Cal. 295; *Silvarer* v. *Hansen,* 77 Cal. 579; *Bryan* v. *Ramirez,* 8 Cal. 461; 58 Am. Dec. 340; *Godeffroy* v. *Caldwell,* 2 Cal. 489; 56 Am. Dec. 360; 2 Herman on Estoppel, sec. 1138, and cases cited; *Scott* v. *Jackson,* 89 Cal. 262; *Swain* v. *Seamans,* 9 Wall. 254; *Dezell* v. *Odell,* 3 Hill, 219; 38 Am. Dec. 628; Code Civ. Proc., sec. 1962, subd. 3.) Section 733 of the Code of Civil Procedure is to be strictly construed, and limited to cases of willful and malicious trespass. (*Barnes* v. *Jones,* 51 Cal. 303; *Wallace* v. *Finch,* 24 Mich. 255, 256; *Cohn* v. *Neeves,* 40 Wis. 393; *McDonald* v. *Montana Wood Co.,* 14 Mont. 88; 43 Am. St. Rep. 616.)

VANCLIEF, C.—It is alleged in the complaint that on March 15, 1893, the plaintiff was the owner and in possession of the northwest quarter of the southwest quarter of section 28, township 16 south, range 1 west; on which day, and for a long time prior thereto, there were growing upon said land seventy-two lemon trees, the property of the plaintiff. That on said day "the defendant wrongfully entered upon said land, and willfully, knowingly, and maliciously, with full knowledge of the ownership of said property by plaintiff, dug up, removed, carried away, and converted to his own use the said lemon trees which were then and there growing upon said land," whereby plaintiff lost said trees, and the said

land was greatly damaged and lessened in value to the extent of one thousand dollars, "and thereby the defendant, under and by force of section 733 of the Code of Civil Procedure of the state of California, has become liable to pay the plaintiff treble the amount of said damage, and that no part of said damages has been paid. Wherefore, plaintiff prays judgment for said sum of one thousand dollars damages, and that the same be trebled under and by virtue of said section of the code, and for costs of suit."

In his answer the defendant denies that plaintiff owned or possessed the land or the trees. Denies that defendant maliciously, or with knowledge of plaintiff's ownership, dug up or removed said trees. And denies all the allegations of damage.

During the trial by the court without a jury the defendant, by leave of the court, amended his answer by adding thereto the following:

"For another and separate defense to plaintiff's alleged cause of action the defendant avers that, at the time of the digging up, removal, and carrying away of the lemon trees mentioned in the said complaint, the defendant was, and for the period of one year and upwards theretofore had been, in the actual, exclusive, notorious, and adverse possession of the lands and premises upon which the said lemon trees, and all of them, were situated. That while the defendant was so in such possession of the said premises, to wit, about the month of June, 1892, the defendant brought upon the said land, and there planted and set the said lemon trees and all of the same, and that such lemon trees were at the time and before they were so planted the property of defendant. That the defendant cultivated, irrigated, and cared for said trees on the said land from the time of the planting thereof, as aforesaid, in the usual and customary manner, until the same were removed by him on or about the fifteenth day of March, 1893. That the defendant took possession of the said land on which the said lemon trees were planted and grew, and from

which the same were removed, and planted the said trees thereon and cultivated the same in good faith, believing himself to be the owner thereof, and that the plaintiff well knew of the defendant's said possession and the planting of the said trees and cultivation of the same, and made no objection thereto, but acquiesced therein. That defendant is, and was at all the times herein mentioned, the owner of a tract of land about forty acres in area, adjacent on the east to the land on which said lemon trees were so planted and cultivated.

" That previously to taking possession of the said lands on which the said trees were planted as above alleged, defendant caused a survey thereof, together with the said lands of defendant adjacent thereto on the east, to be made by a competent surveyor, and that such survey so made included the said lands with those of defendant adjacent thereto, and showed the same to be part and parcel of defendant's lands. That afterward and about the fourteenth day of March, 1893, defendant caused another survey to be made of all the lands above described as well as other lands of defendant adjacent thereto, and that in and by such last-mentioned survey it appeared that the said lands on which the said lemon trees were then planted were not within the boundaries of defendant's land; and that, in consequence of such last-mentioned survey, the defendant was in doubt as to his ownership of the land on which the said trees were situated, and being so in doubt, and while he was in possession of the said land on which the said trees were planted and grew and were situated, on the said fifteenth day of March, 1893, as aforesaid, he removed the same, and that such removal so made by defendant, and none other, constitutes the acts of trespass alleged by the plaintiff in her complaint. That defendant removed such trees as above shown in good faith, believing himself to be the owner thereof, and while in possession of the same, and while in the actual, adverse, and exclusive possession of the land on which the same stood, and with no desire or intention to injure the plaintiff."

The court found as facts that the plaintiff was the owner of the land as alleged in the complaint; but that on March 15, 1893, and for the period of about one year prior thereto, the defendant had been in the exclusive adverse possession of the land, claiming title thereto in good faith; that while in such adverse possession the defendant had planted said lemon trees, and cultivated them for the period of about nine months immediately preceding March 15, 1893; that on March 15, 1893, the defendant, being in doubt as to whether he owned the land on which said trees were then growing, dug them up and removed them to other land, believing them to be his property; and that the land from which he removed them was not thereby damaged or lessened in value; and further found, substantially, all the facts alleged in defendant's amendment to his answer as above set out.   And, as a conclusion of law, found that the plaintiff should take nothing by her action, and that defendant recover his costs.

The plaintiff has appealed from the judgment and from an order denying her motion for a new trial.

It appears by the findings of the court, justified by the evidence, that in March, 1892, the plaintiff owned the forty acres of land described in her complaint, and that defendant owned a lot of forty acres adjoining the same, but neither plaintiff nor defendant then knew or pretended to know the location of the division line between their lots, although plaintiff, by her agent, had pointed out to defendant about where she had been informed and believed the line ran.   Thereupon defendant employed a surveyor (Hawley) to survey both lots, and to locate the division line between them. Hawley made the survey, and located the division line as running to a corner about eighty feet west of the true corner as afterward established; thus adding to defendant's lot the triangular strip of plaintiff's land on which the trees in question were planted.   The plaintiff knew of the survey by Hawley at the time it was made, and also then knew where Hawley located said corner and

the division line; and then, and during about a year thereafter, accepted and acquiesced in that line as the true division line. At the time of the Hawley survey the land on which the lemon trees in question were afterward planted was unimproved by inclosure or otherwise. Soon after that survey the defendant cleared it by grubbing the growing bushes and removing the stones therefrom; and, during the months of April and May, 1892, plowed and smoothed it, and planted thereon said lemon trees. In August of the same year defendant built a wire fence on a considerable portion of the Hawley line, but did not entirely inclose the land on which the lemon trees were planted. The plaintiff was cognizant of all this work upon and improvement of the land by defendant without objecting to any part of it, and, furthermore, affirmatively manifested her acquiescence by removing and adjusting a portion of her fence to the Hawley line. Mr. W. B. Prentice, plaintiff's son in law and agent, testified for plaintiff: "I never suggested to Mr. Sefton that he had planted his trees too far west, for we knew Mr. Sefton had had Mr. Hawley survey the line, and afterward took it for granted that the survey was correct, and that Mr. Sefton knew what he was doing; and we did not know that it was not correct until Mr. Sefton had Harris and King make another survey last March" (1893).

About March 12, 1893, the defendant had occasion to have all his land, including the forty-acre tract adjoining plaintiff's land, resurveyed, and employed Messrs. Harris and King to make the survey. By this resurvey he first discovered the error in the survey by Hawley, and immediately thereafter ordered his foreman to remove the lemon trees from the land between the Hawley line and the line run by Harris and King, and also to remove the fence which he had built on the Hawley line. On the morning of March 15, 1893, his foreman, with other servants, commenced to take the trees from the ground, and when they had taken up only seven or eight trees they were ordered by plain-

tiff's agent to desist, and did so for the time being, but later on the same day, in obedience to orders from defendant, removed the remainder of the trees, against the protest of the plaintiff's agent. On the same day (March 15th) defendant wrote to Mr. Prentice, who was then in charge of plaintiff's land, informing him of the survey by Harris and King, completed the day before, and of defendant's instruction to his superintendent to remove the lemon trees and fence, and asking Prentice to accept the division line as located by Harris and King, or to have it verified by a surveyor of his own choice; and it appears that plaintiff did procure a resurvey by a Mr. Wheaton, which verified that by Harris and King to her satisfaction, and that she accepted the line run by Harris and King as the true division line. There is no question that both plaintiff and defendant, in good faith, believed the Hawley line to be the true division line until after the survey by Harris and King; nor that plaintiff acquiesced in, and thereby impliedly consented to, all that defendant did upon her land, except the removal of the lemon trees. Nor is there any evidence that defendant was even negligent in selecting Hawley as a reputable and competent surveyor, nor that Hawley was not such.

Appellant contends that the action is not of the nature of a common-law action of trespass, but is a special action, founded upon section 733 of the Code of Civil Procedure, of which the following is a copy: "Any person who cuts down or carries off any wood or underwood, tree or timber, or girdles or otherwise injures any tree or timber on the land of another person, or on the street or highway in front of any person's house, village, or city lot, or cultivated grounds, or on the commons or public grounds of any city or town, or on the street or highway in front thereof, without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of damages which may be assessed therefor, in a civil action, in any court having jurisdiction." And further claims that, if plaintiff is

entitled to recover any damages, such damages must be trebled by the court.

While it may be conceded that the complaint states a cause of action in which the alleged damages may be trebled, it nevertheless includes a cause of action for damages which should not be trebled; and whether the plaintiff is entitled to recover at all depends upon whether either of these causes of action was proved.

To entitle the plaintiff to treble damages, under section 733 of the Code of Civil Procedure, she must have proved her allegation that defendant willfully or maliciously removed the trees, knowing them to be the property of plaintiff.

Section 251 of the late Practice Act, which is substantially the same as section 733 of the Code of Civil Procedure, was construed in the case of *Barnes* v. *Jones*, 51 Cal. 303. In that case it was averred in the complaint that the defendants, "without leave of the plaintiff, wrongfully" entered upon plaintiff's land, cut down and carried off the timber, whereby plaintiff was damaged in a specific sum, "contrary to the form, force, and effect of section 251 of the Practice Act." But there was no averment that the trespass was committed knowingly, willfully, or maliciously; and for this reason it was held that the complaint failed to state a cause of action entitling the plaintiff to treble damages, though it entitled him to actual damage. The court said: "While the statute does not so state in terms, it is clear, we think, that it was not intended to apply to cases in which the trespass was committed through an innocent mistake as to the boundary or location of a tract of land claimed by the defendant," citing several cases in which similar statutes of other states have been so construed.

That the defendant in the case at bar entered upon plaintiff's land, planted the lemon trees thereon, and cultivated them, until his second survey of the land, through an innocent mistake as to the true location of the division line between his land and that of plain-

tiff, and that plaintiff acquiesced in all these acts of defendant through a like mistake, is clear and undisputed.

But it is claimed by appellant that the act complained of—the removal of the trees—was committed after defendant discovered the mistake, and, therefore, was a willful severance and removal of the trees which he then knew to be the property of plaintiff, in the sense of section 733 of the Code of Civil Procedure, as qualified by section 3346 of the Civil Code as follows: "For wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damages is three times such a sum as would compensate for the actual detriment, except where the trespass was casual and involuntary, or committed under the belief that the land belonged to the trespasser, or where the wood was taken by the authority of highway officers for the purposes of a highway; in which cases the damages are a sum equal to the actual detriment."

Conceding that after plaintiff regained possession she was entitled to treat the defendant as a trespasser, *ab initio*, for the purpose of recovering all *actual* damages suffered by her in consequence of his entry and subsequent acts upon her land, the important remaining questions are: 1. What were the actual damages so suffered by plaintiff? 2. If no actual damage, is she entitled to a reversal of the judgment to the end that she may recover merely nominal damages?

1. No damage is claimed for mesne profits; nor for any injury to the substance of the estate, unless the removal of the lemon trees may be deemed such. And, under the facts and circumstances of this case, I think the plaintiff is estopped from claiming that the lemon trees ever became a part of her estate in the land, and consequently that she suffered no actual damage in consequence of their removal by the defendant. While the adverse possession of the defendant was not of sufficient duration to give him title to the land, and though there was no *express* agreement that the Hawley line

should be adopted as the true division line, yet, as was said by this court in *Helm* v. *Wilson*, 76 Cal. 486: "It has been held that, even without any agreement more than is implied from their acts, if two persons trace their dividing line, and, both recognizing it as such, one goes forward with the knowledge and acquiescence of the other, and makes valuable improvements, so valuable as to work great injury to the party making them if the line be disturbed, the other will be estopped from afterward alleging such mistake *as will deprive the builder of his improvements*, and especially if the party seeking to disturb the line knew at the time the improvements were made all that he subsequently learned, *or if he had the means of knowledge*. (*Dolde* v. *Vodicka*, 49 Mo. 98; Wait's Actions and Defenses, 718, and cases cited.)"

The foregoing quotation is substantially a quotation from the opinion of the court by Bliss, J., in the case cited (*Dolde* v. *Vodicka*, *supra*), wherein the learned justice further said: "The kind of possession necessary to give title under the statute of limitations is not necessary to be considered, and though the decisions in regard to estoppel in pais in cases of this kind are not entirely harmonious, yet the doctrine as here announced is founded in equity and cannot be controverted in principle." The action was ejectment for a strip of plaintiff's land on which the defendant had built a portion of a valuable brick house through an innocent mistake of both parties as to the true location of the division line between their adjoining lots, induced by an erroneous survey by their common vendor.

*McKelway* v. *Armour*, 10 N. J. Eq. 115, 64 Am. Dec. 445, is a case in which the complainant was relieved from the consequence of a similar mutual mistake of the parties. In that case "complainant erected a valuable dwelling-house, by mistake, on the land of the defendant; defendant lived in the vicinity, saw complainant progressing from day to day with the improvements, and admitted that he did not suspect the erections to

be on his lot until some time after their erection, when, by actual measurement, to his surprise, he discovered the mistake." The court of errors and appeals, by the chancellor, said: "Under such circumstances it would be most unjust to permit Armour to take these improvements and to send the complainant away remediless. It is very true, as was urged upon the argument, the complainant is the most to blame in this matter. A diligent examination of the deed to Armour and an actual measurement of the land would have decided the difficulty. But it was a vacant lot of land, plotted out upon a map only, and the mistake was one which might occur to the most careful and diligent man. The fact of Armour's standing by and participating in the mistake is an important feature in the case."

In *Wickliffe* v. *Clay*, 1 Dana, 586, it was held by the court of appeals that "where one in the possession of land, held bona fide as his own, has erected buildings thereon, he (or those claiming under him) may remove them without incurring any responsibility to the owner of the paramount title." In that case the building erected and removed was a stable. The court, by Chief Justice Robertson, said: "There is no reason to doubt that Lytle took possession of the lot, not as a willful trespasser, but in good faith (not then knowing or apprehending that it was the property of Philips and wife), and that, whilst thus possessed, he erected the stable in equal good faith; and therefore he, or any other person claiming under him, had a perfect right, according to the doctrines of the civil law, altogether consistent in this respect with the principles of the common law, to remove the stable, *without doing any injury to the lot itself*, whilst he was in possession; and, consequently, by such a removal no liability was incurred to the true owners of the lot." As to estoppel by tacit acquiescence, see, also, *Scott* v. *Jackson*, 89 Cal. 258.

But, aside from the doctrine of estoppel, there are at least two classes of decisions utterly inconsistent with the allegation that plaintiff suffered actual damage in

CVIII. CAL.—14

consequence of the removal of the lemon trees; namely, decisions as to the grounds and measure of damage suffered by persons whose lands are condemned for public use, in which it has been held that, although the owner is entitled to full compensation for the land taken, and for all permanent improvements thereon made by himself or by those from whom he derived title, yet he is not entitled to damages for improvements made by the party at whose suit the land is afterward condemned, though made by such party without authority of law or the consent of the owner of the land (*Albion River R. R. Co.* v. *Hesser*, 84 Cal. 435, and cases there cited, *San Francisco etc. R. R. Co.* v. *Taylor*, 86 Cal. 246); and decisions allowing the value of permanent improvements made by an adverse possessor in good faith to be set off against the actual damages suffered by the owner of the land. (Sedgwick on Damages, sec. 915, et seq; Code Civ. Proc., sec. 741.) All the reasons advanced in support of the decisions in these classes of cases seem equally applicable to the case at bar, and quite sufficient, without aid from the doctrine of estoppel, to warrant the conclusion that plaintiff suffered no actual damage in consequence of the removal of the lemon trees.

Whatever might be the effect of sustaining the contention of appellant that plaintiff had regained possession of the land before defendant removed the trees, it is enough to say the court found that the plaintiff was not in possession of the land at the time the trees were removed, but that the land was then, and for about one year next before that time had been, in adverse possession of the defendant; and that this finding is justified by the evidence.

2. In actions *ex delicto* nominal damages are often given, though no actual damage has been suffered; but a judgment for such damages is justified only on the ground that it conserves some right of the plaintiff which has been nominally infringed, and which might else be lost by acquiescence and lapse of time. (Sedg-

wick on Damages, secs. 99, 100.)    In this case, however, no right or title of the plaintiff is jeopardized by denying her nominal damage, since defendant acknowledged her title and right of possession, and voluntarily surrendered to her the exclusive possession of the land before the commencement of this action.    Besides, appellant makes no point here relating to nominal damages.

If the views above expressed are correct they obviously answer all points made by appellant, though some of them have not been expressly noticed.

I think the order and judgment should be affirmed.

SEARLS, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the order and judgment are affirmed.

GAROUTTE, J., VAN FLEET, J., HARRISON, J.