ZENON KNOWLTON, Appellant, v. LOUIS C. SMITH, Respondent.

1. *Administration—Conveyance.*—Under the act (R. C. 1835, p. 33, §§ 20, 21 & 25) it was not necessary that the deed of the administrator, conveying the land of the decedent under a sale made by order of the probate court, should recite the fact of the report of sale and its approval by the court. The deed reciting the order of sale and sale would be *prima facie* evidence of title, and it rests upon the party controverting the effect of the deed to prove affirmatively that the sale was not approved.

2. *Estoppel—Conveyance—Agreement.*—Parties agreeing upon a division line between their respective lands, are not estopped by such agreement if it be entered into under a mistake of facts, provided the rights of innocent third parties have not intervened in consequence thereof.

3. *Limitations—Adverse Possession—Estoppel.*—The possession required by the statute must be with the intent of asserting an adverse title. Therefore when parties designate their division lines through ignorance or mutual mistake, the possession held by either will not be adverse.

*Appeal from St. Charles Circuit Court.*

This was an action of ejectment for about fifty-two acres, being part of United States survey No. 1692, originally granted to Antoine Prieur. The whole survey became the property of William P. Clark, whose administrator, in 1842, sold it in two equal portions; the western half to John P. Belton, under whom the plaintiff claims, and the eastern half to Francis Yosti, under whom the defendant claims. It did not appear that any dividing line was run at this time, nor did the administrator's deeds to the parties give any courses or distances, merely referring to an equal division of the tract of 800 arpens, and describing the Belton tract as lot No. 2, containing 400 arpens, and the Yosti tract as

lot No. 1, containing 400 arpens. The testimony tended to show that after the sale, but before the execution of the deeds, Belton and Yosti had a division line surveyed and run by one Wardlaw, and expressed themselves contented therewith and agreed to abide by it.

Defendant's testimony tended to show that his possession at the commencement of the suit extended only to this Wardlaw line; rebutting testimony was introduced by plaintiff, tending to show that defendant's possession extended over on plaintiff's side of the Wardlaw line.

Plaintiff's testimony tended to show that although Wardlaw's line divided the tract equally, as he located the outer boundaries, yet in fact he did not correctly ascertain those boundaries according to the United States survey, but made the tract larger by about fifty acres than it really is; that, as a result of this error in the out-boundaries, Wardlaw located the division line too far over on the plaintiff's side, sufficiently to embrace the land in dispute or the greater part of it. The testimony also tended to show that the true location of a dividing line, in accordance with the United States survey, showed the land in controversy to be on the plaintiff's side of such true line, and that it was in defendant's possession at the commencement of the suit. It was not claimed by plaintiff that his title papers, exhibited in evidence, vested in him more than an undivided half of the land in dispute. The testimony tended to show that in 1843, one Joseph Blair held possession under a contract of purchase from Thomas W. Cunningham, of the eastern half, now held by defendant; that, finding himself unable to complete his purchase, and being informed that the western half was likely to become the property of his wife by a gift from her grandfather, he moved some rails cut by him on the eastern half over on the western half, and there built a fence with them, thus, for the purpose of saving the rails, virtually extending his possession a considerable distance over the line, and so as to include the land in controversy, or more. The evidence also tended to show that this fence was moved back again, but

there was some conflict as to whether this last operation restored the possession to the Wardlaw line, or to a line west of it.

It was contended by the plaintiff, that this extension of possession by Blair, for the mere purpose of saving his rails, and not as an act of ownership or assertion of title, could not be considered in giving effect to the defendant's plea of limitation. The deed from William P. Clark, administrator to John P. Belton, exhibited by plaintiff as a link in his chain of title, contained no recital of the report of sale made by the administrator, nor of an approval of such report by the probate court. The deed from Francis Yosti to Thomas W. Cunningham, exhibited by defendant, described the land conveyed as the " eastern half of survey No. 1692, and designated as lot No. 1 in the division," &c. Referring further to the sale by William P. Clark's administrator to Yosti, "and containing, by late survey, four hundred and twenty-nine acres, be the same more or less."

The court gave, on plaintiff's application, the instructions sustaining his position as to Belton's temporary occupancy of part of the western half of the survey, but refused the instructions asked for by plaintiff to the following effect:

1. That the plaintiff's chain of title was sufficient to establish his ownership of an undivided half of the land sued for, unless defendant had shown a paramount title by the statute of limitations or satisfactory proof of an agreed line.

2. That if Wardlaw's division line was mistaken or erroneous, and was agreed upon by the parties in ignorance of the true facts of the case, and in consequence of such mistake, it was not binding on the parties as an agreed line, but the rights of the parties should be determined by the true division line.

3. That if it appear that plaintiff and defendant were entitled to equal halves of survey 1692, the respective rights of the parties should be determined by a line so dividing the survey.

4. That even if there was a valid agreement as to the

Wardlaw line, yet if at the commencement of the suit the defendant's possession extended over that line, the plaintiff was entitled to recover an undivided half of the land so encroached upon by defendant.

The court gave, on defendant's application, instructions embodying the following propositions:

1. That the deed from William P. Clark, administrator to Belton, was void for want of a recital of the administrator's report of sale and its approval, and for want of any other proof of such report and approval.

2. If it appear that a division line was agreed upon between Belton and Yosti, and that the respective claimants have since continuously held possession according to that line, then both parties are estopped from disputing such line and the plaintiff cannot recover.

3. That possession under the deed from Yosti to Cunningham, if for a sufficient length of time, and adverse, and including the land in controversy, was sufficient to sustain the plea of limitation.

The plaintiff took a non-suit, with leave to move, &c. upon the overruling of which motion, he took an appeal.

*E. A. Lewis,* for appellant.

I. The plaintiff's chain of title was at least *prima facie* complete, and could be controverted only by paramount title shown in defendant.

II. The court erred in refusing the second and third ininstructions asked by plaintiff. Agreements establishing boundary lines are, like all other agreements, of no binding force upon the parties if founded upon mutual mistake in material fact. (Menkens v. Blumenthal, 27 Mo. 198; Frederick v. Brulard, 6 La. An. 382; Gray v. Couvillon, 12 *id.* 730; Westly v. Sargent, 38 Me. 315; Carroway v. Chacey, 2 Jones' Law, 170; Cunningham v. Roberson, 1 Swan, 138.)

III. The deed from Clark's administrator to Belton contained every recital required by the statute in force at the time. (R. C. 1835, p. 53, §§ 22–3.) The law declares that

" such deeds shall convey all the title," &c. ; not that such deed, " together with proof" of the precedent steps, shall have that effect. In the absence of proof to the contrary, the legal presumption is that all the precedent requisitions were complied with. (Grignon v. Astor, 2 How., U. S. 319 ; Jackson v. Jenkins, 4 Wend. 436 ; Snyder v. Marshall, 8 Watts, 416 ; Overton v. Johnson, 17 Mo. 442.) Nor can this presumption be questioned in a purely collateral proceeding. The cases of Vallé v. Fleming, 19 Mo. 454 ; Speck v. Wohlein, 22 Mo. 310, and Bank v. White, 23 Mo. 342, furnish no authority for this case.

*Whittelsey*, for respondent.

I. The deed of the administrator did not recite that he had made report of his proceedings under the order of sale, and that his report had been approved, nor did the plaintiffs offer in evidence the record of the St. Louis probate court to show such approval. The R. C. 1835, p. 33, §§ 20–1–2, require the administrator to make full report of his proceedings at the next term of the county court after the sale, and declare that if said sale be not approved, the proceedings shall be void. The judgment of the court approving the proceedings are absolutely essential to the validity of the sale ; and if there be no such approval the sale is void, and no deed from the administrator can convey the title without such approval. The evidence of such approval should have appeared either from the recital in the deed or from the records of the court. (Vallé v. Fleming, 19 Mo. 454 ; Speck v. Wohlein, 22 Mo. 310 ; Bank v. White, 23 Mo. 342.)

II. The parties are estopped by the action of the respective grantors, Yosti and Belton, and the action of the parties under such action. The defendants have been in actual possession of the premises sued for since May, 1843. Yosti conveyed to Cunningham 429 acres, and Cunningham conveyed and warranted to Smith the quantity of 429 acres, and Smith has been in possession since 1850, claiming under his deed. (Taylor v. Zepp, 14 Mo. 482; Blair v. Smith, 16 Mo.

273 ; see the instructions in that case ; Hempstead v. Easton, 33 Mo. 142 ; Boyd v. Graves, 4 Wheat. 513.)

III. The plaintiff's deed from Clark's administrator calls for lot No. 2, as made by the appraisers as per report on record. No such plat was produced on the trial, to show the lines of the lot No. 2. The only evidence of a division of the tract was Wardlaw's survey in 1842, and by that the defendant is in possession, and by that only. (Johnson v. Prewitt, 32 Mo. 553.)

IV. The instructions upon the statute of limitations were correctly given. (Biddle v. Mellon, 13 Mo. 335 ; Blair v. Smith, 16 Mo. 293 ; Callaway County v. Nolley, 31 Mo. 393 ; Johnson v. Prewitt, 32 Mo. 553 ; Schultz v. Arnot, 33 Mo. 172.)

WAGNER, Judge, delivered the opinion of the court.

The chief error complained of is the second instruction given by the court below at the instance of the respondent, that the deed from Clark's administrator to Belton did not show that the administrator ever made any report of his proceedings in the sale of the land, nor that said report was ever approved by the probate court ; and that as no evidence was offered or introduced showing that said report was ever confirmed or approved, the deed was void, and passed no title on which plaintiff could recover. The proceedings in the probate court, and the sale by the administrator, took place in the years 1842 and 1843, and were consequently governed by the code of 1835. That law required that the administrator or executor, at the next succeeding term of the court after sale, should make full report of his proceedings, with the certificate of appraisement and a copy of the advertisement verified by affidavit, &c. ; and if such report and proceedings of the executor or administrator were not approved by the court, the proceedings were to be void ; but if they were approved, the sale should be valid, and the executor or administrator, as soon as full payment should be made of the purchase money, should execute, acknowledge and deliver

to the purchaser a deed, stating the order of sale and the court by which it was made and the consideration.

It is contended that as no recital is made in the deed that the court approved the proceedings, the conveyance is void, or, at least, can only be upheld by showing from evidence *aliunde* the approval of the court in the premises. It is sufficient answer to this to say, that the statute did not require such recital. All that was necessary according to the then existing law, was to state the date of the order of sale, the court by which it was made, and the consideration, and these are all embodied in the deed. This compliance with the law was sufficient to make the deed *prima facie* evidence, and the *onus* of proof to destroy its validity devolved on those who attacked it. A liberal construction will be indulged to uphold judicial sales, and where the proceedings appear regular on their face, they will be presumed to be correct in the absence of rebutting facts and circumstances.

In Vallé v. Fleming, it was shown affirmatively by the record, that the law had not been complied with, and that the jurisdiction of the court had never attached. (19 Mo. 454.) And in suits of this description it is not competent for third persons to impeach the deed collaterally; it can only be done by the parties or their privies in a proceeding to set it aside, or have it cancelled, or by their creditors in attacking it for fraud.

It is claimed that the parties having agreed upon a division line, and occupied each his own part respectively on the faith of that agreement, that they are estopped and concluded from asserting any other line. If the agreement was made and entered into under a mistake of facts, a party is not precluded from claiming his rights, as under such circumstances there is no presumption of his surrender, or waiver of rights given up under a misapprehension. Whilst parties cannot avail themselves of any defence where they have entered into a contract through mistake or ignorance of law, it is different as to a mistake or ignorance of facts, provided the rights of innocent third persons have not inter-

vened in consequence thereof; and this virtually disposes of the plea of the statute of limitation.

The possession required by the statute must be with the *intention* of asserting an adverse title. It is the occupation with an intent to claim against the true owner that makes the possession adverse; therefore, where parties designate their division lines through ignorance, inadvertence or mutual mistake, the possession held by either will not be adverse. Questions of adverse possession thus depending upon the intention of the possession are questions of facts as well as law, to be determined by a jury as the best means of ascertaining the truth, under proper instructions from the court. Lord Mansfield says: "disseisin is a fact to be found by a jury (Taylor v. Horel, 1 Burr. 60); but if the jury return a verdict only that the defendant has held quiet possession of the demanded premises for more than twenty years, such verdict cannot, by legal intendment, be considered as establishing the alleged fact of disseisin. (Pejepscot Proprietors v. Nichols, 1 Fairf. 256.) There must be something more than mere possession; there must be shown an intention to possess and occupy adversely to the true owner.

Having indicated our views on all the material questions that can arise in the trial of this cause, it is not necessary to notice the instructions in detail.

The judgment is reversed and the cause remanded. Judge Holmes concurs; Judge Lovelace absent.