JACOB FINELITE, Appellant, *v.* JOHN SINNOTT, Respondent.

*Court of Appeals, Dec. 2, 1890.*

Aff'g 25 J. & S. 57.

1. *Ejectment. Description of premises.*—Where reference is made, in a devise or deed, to a map or plan, which is a public record, for a description of the property, *prima facie*, the boundaries as given in the map or plan will control.
2. *Same.*—If it leads to no absurdity, it will be presumed that the party making the reference meant to confine the devisee or grantee to the dimensions of the lot described in the plan or map referred to by him for such description, and it is unimportant who made the maps or marked the dimensions thereon.
3. *Same.*—The fact that the testator was seized and in possession of the property in dispute, is not of such material importance as to change the rule above stated.

Appeal from a judgment of the general term of the superior court, affirming a judgment entered upon an order dismissing the complaint on trial.

*Christopher Fine,* for appellant.

*W. H. Arnoux,* for respondent.

PECKHAM, J.—This is an appeal from the judgment of affirmance, by the general term of the superior court of New York, of a judgment entered upon a nonsuit at the circuit.

The action is ejectment, brought by the plaintiff to re-cover from defendant the possession of a piece of land of a little over a foot in width, on the west side of Baxter street in the city of New York, and forming a portion of an alley about six feet wide, on and running west from Baxter street, such alley lying between two houses fronting on that street.

Blazi Moore was the common source of title, the plaintiff claiming under a devise by him of land to one daughter, and the defendant under a devise to another in the same will. In 1817 he devised to his daughter Rosanna, for life, a lot of land on the corner of Chatham and Baxter (then Orange) streets, about thirty feet front on Chatham street, and running from Chatham northerly alone the west line of Baxter street, sixty-six feet. He also devised to such daughter, for her life, a lot of ground on the west side of Baxter street, directly in the rear of and adjoining the above-mentioned lot, and "being about twenty-seven feet front" on Baxter street, and thirty-four feet in depth. Upon the decease of his daughter, Rosanna, both lots, as stated by the testator in his will, "shall go to and be held and enjoyed by my grandson, Augustus Winter, his heirs and assigns forever, to whom I give and devise the same accordingly."

Moore devised by the same will to his daughter Margaret a lot of ground fronting on Baxter street, adjoining that already given to his daughter Rosanna, and bounded south-erly by it, and being also " about twenty-seven feet in width" on Baxter street, and thirty-four feet in depth.

If the daughter Rosanna took the precise frontage on Baxter street spoken of in the will, it is seen that she took sixty-six and twenty-seven, or ninety-three feet in all, and in that case the daughter Margaret took a lot twenty-seven feet wide on Baxter street, immediately north of the ninety-three feet taken by her sister Rosanna. The defend-ant claims that his southern line conmences ninety feet and three inches, instead of ninety-three feet north of Chatham street.

It is thus seen that the disputed question is, how far north on Baxter street does the land of the plaintiff continue ?

Upon the trial the plaintiff put in evidence the will of Blazi Moore, and it was admitted that the title of both parties came through that will. It was also admitted that at the time of her death, in January, 1872, Mrs. Mary Shorter was seized and possessed of the property in dispute. She was widow of the grandchild of Moore, and she took by descent from her son the same property which Moore devised to his daughter Rosanna for life and to his grandchild in fee.

At the time of Mrs. Shorter's death the property was covered by a brick house on the corner of Chatham and Baxter streets, running north on the latter street forty-three feet and three and three-quarters inches. North of this house on Baxter street was another brick house twenty-one feet and ten inches wide. North of this again was a brick house twenty-five feet two inches wide, and north of this was the alley six feet wide.

Taking the land occupied by the various houses and we have eighty-seven feet and three and three-quarters inches, leaving five feet eight and one-quarter inches to bring plaintiff up to his whole ninety-three feet as claimed, and that still leaves three and three-quarter inches of the alley untouched by the plaintiff's title. On the other hand, if the defendant be correct in his claim to commence at a point ninety feet three inches from Chatham street, that gives plaintiff two feet eleven and one-quarter inches of the alley and the defendant the rest.

I have been thus particular in detailing the precise condition in which the property stood when Mrs. Shorter died, because, under some circumstances, that condition might be of importance in determining the question arising under her will. She had been in possession of these three houses since 1850, the time of the death of her son, up to 1872, when she died. She had rented the houses ever since 1850. She left

a will in which she devised land to her daughter Emma L. Parmelee, in these words: " Also two other lots of land with the buildings thereon, situate in the sixth ward of the city of New York, known on the maps of the assessors of said sixth ward as lots numbers 645 and 210."

Subsequent to the death of Mrs. Shorter, Mrs. Parmelee took possession of these houses and collected rents and in 1876 conveyed the premises by deed to Davis Finelite, in which she described the land as being ninety-two feet, six inches on Baxter street, " and being the same land and premises devised to " her by the will of her mother, Mrs. Shorter.    Davis Finelite conveyed the premises to plaintiff, describing the land as ninety-two feet, six inches on Baxter street.

The sole question in the case arises under the devise in the will of Mrs. Shorter to her daughter, Mrs. Parmelee. An inspection of the assessors' map shows that lot 645 of the sixth ward in New York is therein stated to be sixty-two feet, one inch on Baxter street.  The house on the corner of Chatham and Baxter streets is as already stated forty feet, three and three-quarter inches and the next one on the north on Baxter street is twenty-one feet, ten inches, thus making the exact lot of sixty-two feet, one inch, with only a variance of three-quarters of an inch.  It can be assumed, therefore, that lot 645 on the map comprised these two houses.  Lot 210 by reference to the assessors' map appears to be of a width of twenty-eight feet, one inch, on Baxter street, and that gives a whole width to the property on this street of ninety feet, two inches.  Eighty-seven feet, three and three-quarter inches are taken up with buildings, as shown already, and the balance of two feet, two and one-quarter inches takes just that amount of the six feet of alley.  In this way the alley would be divided nearly equally between the parties.

By confining the plaintiff to the land described in the assessors' map no absurd, extraordinary or so far as ap-

pears, unjust or inequitable result is arrived at. The
plaintiff takes all the property that is built upon and in ad-
dition thereto part of the alley which lies to the north
of the portion covered with buildings. The question is
whether the plaintiff must not be so confined by reason of
the language contained in Mrs. Shorter's will. She therein
devises two lots of land in the sixth ward to her daughter,
Mrs. Parmelee. She does not herself fully describe those
lots. She refers to a public record for that purpose. In
effect she says : " I devise you certain land which is de-
scribed or laid out on a map of the assessors for the sixth
ward and on such map the lots are known as numbers 645
and 210."

What is the lot known as 645 ? Clearly it is the lot as it
appears on that map, and the lot as it appears on that map
has certain dimensions, and those dimensions give sixty-two
feet, one inch on Baxter street. For what other purpose
could a reference be made to the map unless for the purpose
of description ? And how can the lot be described without
stating that it is a lot as appears by the map on the corner
of Chatham and Baxter streets ? But that mere statement
gives no information as to the amount of land on such street
included in the lot. There must then be boundary lines on
the map to show the shape of the lot, and the only possible
way to show it is to give the number of feet the land includes
on each street, and place the lines accordingly. When that
is done, the description is sufficient for general purposes.
Where such a reference is given, *prima facie*, the descrip-
tion contained in the map or plan referred to is to be the
boundary of the lot devised or otherwise conveyed. If it
lead to no absurdity, it would be presumed that the party
making the reference meant to confine the devisee or grantee
to the dimensions of the lot described in the plan or map
referred to by him for such description. It would rest with
the party challenging the dimensions contained in the map
to show such facts that, taken in connection with the lan-

guage used by the testator or grantor, no one could be supposed to contemplate the result which would arise from a literal interpretation of such language. If such reference would result in the division of a house and the practical destruction of the entire value of the land devised or conveyed, a court might search for facts which would show that the reference to the plan was only to generally locate the lot as in a certain part of the city, and that the whole land of which the testator or grantor was there possessed, or the whole house which he had there owned, was to pass by the conveyance. This is said only to prevent any inference from this decision that in all cases the map or plan referred to must be conclusive regarding the amount in feet and inches of the land to be conveyed.

We would not say that a reference to a map or plan is always to be treated as of the same force as a definite, detailed description of the land by metes and bounds, feet and inches contained in the instrument itself which conveys the title and describes the land. Much must depend in each case upon the specific language used, from which the intent of the party is to be gained where a reference is made to some plan or map for a description.

In this case it must be assumed that the testatrix was familiar with the assessors' map of the sixth ward, and with the lots and their dimensions as there displayed, for she picks out the very numbers represented in them, and with such knowledge she deliberately made the description of the lots as therein contained the description of the land she intended to devise. The fact that neither the plaintiff nor his grantors had anything to do with the marking of the map itself, or the dimensions of the lot as contained in the map, is not of any importance. The original owner referred to such map for the description of the land which she devised, and it is unimportant who had made the map or marked the dimensions thereon.

The admission in the case, that at the time of her death

Mrs. Shorter was seized and in possession of the property in dispute, does not, in view of all the other facts, change the result to be arrived at here. That fact is not of such material importance as to change the rule above stated, that the devisee or grantee must, unless under peculiar and exceptional circumstances, abide by the description of the lot devised which the devisor or grantor has adopted by referring to a map or plan containing it. Upon the case thus made, the court granted the motion for a nonsuit, without going into the details of defendant's title. The plaintiff, however, makes a claim that if Mrs. Parmelee only took the lots as described and limited in the assessors' maps by virtue of the language used in the clause of Mrs. Shorter's will already quoted, that in such event the balance of the land of which the latter died seized and which, by the admission of the defendant, includes the property in dispute was not otherwise disposed of by her, and under the residuary clause in her will it goes to her four children, of whom Mrs. Parmelee was one, share and share alike, and that Mrs. Parmelee's conveyance passes not only the whole of the title to the land described in the assessors' map, but also her interest in the land in dispute which she took under the residuary clause of the will and as a tenant in common with the other children of Mrs. Shorter. An action of ejectment is not the proper one in which to test that question. The four children took as tenants in common, assuming, of course, that Mrs. Shorter owned the property in dispute at the time of her death, as admitted, and Mrs. Parmelee by her conveyance could pass only her interest as a tenant in common with her three brothers, who equally with her are entitled to possession. An action of partition would be the appropriate action in which to raise the various questions arising under that claim.

The judgment herein must be affirmed.

All concur.