## McKINNEY v. DOANE, Appellant.

### Division Two, March 20, 1900.

1. **Deed:** DESCRIPTION: SURVEY. Where no description is given of land conveyed by deed other than by the number of the lot and block in the survey of a tract of land, or plat of a town, the authenticated plat or map of such survey is as much a part of the deed as if incorporated in it.

2. ———: ———: ———: MONUMENTS. Where no monuments are mentioned in any of the deeds under which the parties claim, the courses and distances as shown by the original plat to which the deeds refer, must control.

3. ———: ———: CONFLICT BETWEEN PLAT AND ACTUAL SURVEY. If in such case there is a conflict between the plat and the actual survey, the latter will control, provided the corners and lines established by the survey can be identified.

Appeal from Jackson Circuit Court.—*Hon. E. L. Scarritt,* Judge.

AFFIRMED.

*Austin & Austin* for appellant.

(1) When there is a conflict between a map or plat and an actual survey, the latter controls and the reference to the map may be rejected as surplusage. This is upon the supposition that the corners and lines established by the survey can be identified. 1 Jones Real Property, sec. 431; O'Farrell v. Harney, 51 Cal. 125; Penry v. Richards, 52 Cal. 496; Root v. Cincinnati, 87 Iowa, 202; Ogden v. Porterfield, 34 Pa. St. 195; Riddlesburg Iron, etc., Co. v. Rogers, 65 Pa. St. 418; Marsh v. Mitchell, 25 Wis. 706. (2) A corner or boundary well established by marks or monuments controls a description by the map or plat, although this was made contemporaneously with the grant. The map or plat made by the surveyor is admissible in evidence as indicating the location of the survey, but at last the question of boundary is one of fact to be determined by the force and character of the testimony. 1 Jones on Real Property, sec. 435. (3) Where adjoining owners have entered into possession of lots according to boundary, marked by stakes, these are monuments which prevail over the courses and distances of a subsequent corrected survey. Jones v. Poundstone, 102 Mo. 240; Marsh v. Mitchell, 25 Wis. 706; 1 Jones on Real Prop., sec. 436. (4) If a purchaser takes possession of a lot and fences it soon after

the making of the survey and the person who made the plat pointed out the bounds, it is presumed his possession was taken according to the lines of the survey.    Root v. Cincinnati, 87 Iowa, 202.    (5)  Parol evidence is admissible to show that there is a conflict between the survey in the field from which the map was made, and the map itself, in order to determine the correct boundary of any tract of land.    O'Farrel v. Harney, 51 Cal. 125.    (6)  Where the plat and the monuments made by the original survey of a tract of land do not correspond, the monuments are to be resorted to in order to ascertain the true location.    Monde v. Tarbox, 7 Me. 61; Bean v. Batchelder, 78 Me. 184; Ogden v. Porterfield, 34 Pa. 191; Younkin v. Cowan, 34 Pa. 198.    (7)  If the deed of a lot in town for a description of the lot, refer to the official map of the town plat, this reference does not prevent parol evidence from being received to show that the survey in the field from which the map was made, for the purpose of arriving at the correct boundary of the lot.    O'Farrell v. Harney, 51 Cal. 125; Penry v. Richards, 52 Cal. 496; Root v. Cincinnati, 87 Iowa, 202; Kronenberger v. Hoffner et al., 44 Mo. 185; Jones v. Poundstone, 102 Mo. 240; Diggs v. Kurtz, 132 Mo. 250; Whitehead v. Atchinson, 136 Mo. 485.

*D. J. Haff* for respondents.

(1)  Where no description is given of lands sold, other than by the number of the lot and block in the survey of the tract of land or plat of the town or an addition to a town or city, the authenticated plat or map of said subdivided tract becomes as much a part of the deed as if fully incorporated in it.    Dolde v. Vodicka, 49 Mo. 98; Orrick v. Bower, 29 Mo. 212; Shelton v. Maupin, 16 Mo. 127; West v. Bretelle, 115 Mo. 657; Davis v. Rainsford, 17 Mass. 207; Thomas v. Patten, 13 Me. 329; Finelite v. Sinnott, 125 N. Y. 683; 2 Devlin on Deeds, sec. 1022.    (2)  Where no monuments are mentioned in the deed to land conveyed or in any of the deeds or

conveyances of the property, or in the original subdivided plat of the entire tract of ground of which the land in question is a portion, the courses and distances named in the plat to which the deed refers must govern. Whitehead v. Atchinson, 136 Mo. 493. (3) To warrant the court to receive and hear testimony on the theory of a mistake in the description of the property by the courses and distances named in the deed, or the plat to which reference is made for them, and the substitution of a description according to monuments, either the deed itself or the deed with proof of such facts as are competent to be shown in aid of the construction of the written instrument, must contain the necessary elements to authorize the assumption of a mistake as a matter of legal construction. Whitehead v. Atchinson, 136 Mo.493 Finelite v. Sinnott, 125 N. Y. 683. (4) Possession or agreement of adjoining proprietors of land with reference to division of land if they were mistaken as to true lines, work no estoppel against either. Jordan v. Ferree, 101 Ia. 440; Tamm v. Kellogg, 49 Mo. 119; Houx v. Batteen, 68 Mo. 84; Lemmon v. Hartsook, 80 Mo. 13; Jacobs v. Mosely, 91 Mo. 457. (5) The question being as to the true line between lots, evidence that the fence between them was in line with fences on adjoining lots, or on corresponding lots to the north or south, was immaterial. Fairfield v. Barrette, 73 Wis. 464; Fuller v. Worth, 91 Wis. 406. (6) Stakes are not such monuments marking the boundaries of land, that they will control the call for course and distance, and evidence of their erection when the land was surveyed is not admissible to control courses and distances. Reed v. Schenck, 3 Dev. 65; Mann v. Taylor, 49 N. C. 272; Massey v. Belisle, 2 Iredell, 177; Cox v. Freedley, 33 Pa. St. 124.

BURGESS, J.—This is an action of ejectment for the possession of the south two feet of the south thirty-three and one-third feet of the east half of lot eight in block one in Marty's Woodland addition to Kansas City, Missouri. The

petition is in the usual form, and the answer a general denial.

Both plaintiff and defendant derive title from Nellie and Albert Marty, her husband.   In 1879, Nellie Marty and Albert Marty her husband laid off into lots and blocks an addition to said city which was called Marty's Woodland addition and which was platted by them on the 23d day of August, 1879.   All of this addition was sold out with reference to this recorded plat, and by descriptions referring only to the lot and block numbers as shown by the recorded plat.   Lot eight of block one, a part of which is now owned by the plaintiff, was sold by Nellie Marty and Albert Marty, her husband, to William Harris and Sarah Harris, August 25th, 1879, by deed in which the property was described in words and figures as follows, to wit:

"Lots numbers eight and nine, block one, Marty's Woodland addition, as the same are marked and designated on the recorded plat of said addition, now on file in the recorder's office of said Jackson county, Missouri."

Lot number seven, in block one, was sold by Nellie Marty and Albert Marty, her husband to Isabella Danton Cheeseman, the year following, by deed dated April 21st, 1880, the description being:

"All of lot seven, in block one, Marty's addition to Woodland, as the same is marked and designated on the recorded plat thereof."

Lot number 7 was conveyed thereafter, successively, until purchased by defendant's principal, Martha Prescott, August 15, 1895, by the following description:

"All of lot 7, block 1, in Marty's Woodland addition, an addition to the city of Kansas, now Kansas City, as the same is marked and designated on the recorded plat thereof, save and except portions deducted off the east and west ends respectively for streets."

Lots numbers eight and nine were thereafter conveyed by successive conveyances—some twenty-two in number—referr-

ing to the recorded plat of the addition and describing the
property by the lot and block numbers "as marked and desig-
nated on the recorded plat of said addition, now on file in the
recorder's office of said Jackson county, Missouri."

At the time of the platting of said addition, the only
street running north and south through the addition from
Independence avenue was Park avenue, opened forty feet wide
for a part of the way. About ten years after that, Olive
street was opened on the east side of the addition, after which
the lots were for the most part cut in two, and the Olive street
fronts and the Park avenue fronts conveyed and owned and
improved separately. Different conveyances passed the title
to the east half of lot eight in question until the title be-
came vested in the plaintiff in this case.

Defendant's title was derived by successive conveyances,
all by similar description, in which the property was de-
scribed by lot and block, with reference to the plat on file in
the recorder's office.

There was not, in the survey or description upon the
recorded plat of the addition, any reference whatever to any
monuments except the township line and the section corners,
as established by the government surveys and monuments.
In none of the deeds by which the title was transferred through
the successive grantees, from Nellie Marty and Albert Marty,
her husband, to the plaintiff and defendant's principal in this
case, was there any reference to any monuments or stakes or
any other thing than the recorded plat of the addition, either
for location of the property conveyed or description of the
dimensions of the lots.

Until October 3, 1896, lot number seven was vacant and
unimproved.

Lot eight also remained vacant and unimproved, except
as to the Park avenue front, upon which Mr. Harris, in 1880
or 1881, built a house, and also testified that he put a fence
around the whole lot. The east end of the lot, the Olive street

front, which is now owned by plaintiff, was not improved until the year 1889, when it was purchased, together with lot nine, and the east half of the two lots, comprising one hundred feet, was divided into three tracts of thirty-three and one-third feet each. The plaintiff is now the owner of the south thirty-three and one-third feet of the east half of lot eight. The house and improvements were put upon it by S. A. R. Chaney, February 6, 1889, who was then the owner of the lot.

Before erecting his house, Chaney went to the county surveyor and had the lines of the lot located by actual survey, which survey was made a matter of record in the office of the county surveyor, as required by section 8314 of the Revised Statutes 1889. The exact boundaries of the lot were located by survey in accordance with the recorded plat as called for by the deed, and a fence erected on both the south lines and the north line by Chaney.

The improvements thus placed upon the lot in 1889 were used and occupied by Chaney and his grantees up to October 3, 1896, during all of which time the fence located by Chaney on the south line, between lots seven and eight, was undisturbed, and, as shown by the testimony, the fence was upon the lines as indicated by the recorded plat. Chaney also testifies that the line given by him by the county surveyor, upon which he located his fence, correspond with the line upon which the old fence stood, which had been formerly located by Harris.

Defendant Samantha Herring, whose mother owned lot seven prior to conveying it to appellant's principal, Mrs. Prescott, says that the fence erected by Chaney was about six or eight inches south of the one formerly erected by Harris.

Harris testified that the line given by Dan O'Flaherty would save the improvements which he put on lot eight.

Daniel O'Flaherty also, in his testimony, admitted that the line which he gave defendants as the division between lots seven and eight was not the same as that claimed by Harris for

the stakes and the fence which he built in accordance there-with.

"Q.   It agrees with the stake that was put there by Mr. Harris at that time as being the line of his fence ?"

"A.   Well, it very nearly agrees with where he said the fence was—in a few inches."

On or about the third of October, 1896, the defendant began excavating upon lot seven for the erection of a house, and in excavating tore down and removed the fence on the south line of lot eight.   He was immediately notified upon the following day by plaintiff's wife, and warned against this en-croachment, and from time to time thereafter until the house was completed.   The house including the projection of the eaves, which was being erected on the east half of lot seven, extended over to the north upon lot eight, seventen inches.

The case was tried by the court, a jury being waived. Over the objection and exception of defendant, the court at the request of plaintiff declared the law to be as follows:

"1.   The court declares the law in this case to be that where no other description is given of land sold, other than by the number of the lot and block in the survey of the tract of land or plat of the town, or an addition to a town or a city, the authenticated plat or map of said sub-divided tract becomes as much a part of the deed as if fully incorporated in it.

"2.   The court declares the law in this case to be that where no monuments are mentioned in the deed to land con-veyed, or in any of the deeds, or conveyances of the property, or in the original sub-divided plat of the entire tract of ground of which the land in question is a portion, the course and dis-tances named in the plat to which the deed refers must govern.

"3.   The court declares the law in this case to be that where one has purchased a certain lot or tract of land without notice of the actual boundaries or corners, he has a right to rely upon what appears from the original recorded plat thereof to which the deed refers and is not bound by monuments which

do not appear from said plat, or from the deed, or from any mesne conveyances, to have been placed upon the land, unless the monuments are actually upon the land or he knows of them."

Defendant prayed the court to declare the law to be as follows:

"1. It is a well-settled rule of construction, that known and fixed monuments will control, though they conflict with courses or distances called for in deed or plat.

"2. If the court believes from the evidence that Albert Marty and wife when they platted Marty's Woodland addition, caused all of the lots and blocks thereof to be surveyed and stakes to be established at the corners of each of said lots and blocks and when the said Marty and wife sold lots 8 and 9 in block 1, in said addition to William Harris, he pointed out to the said Harris the stakes which bound said lots, and said Harris took possession of said lots and made improvements thereon, and built fences thereon in accordance with said stakes, then said Harris obtained title to said lots as bounded by said stakes even although these stakes may not have agreed with the recorded plat of said addition, and the boundary lines between lots 7 and 8, as shown by said stakes, became the true boundary line between said lots. And if the court further finds from the evidence that the improvements complained of by plaintiff, are on the south side of said boundary line, you will find for the defendant.

"3. The court declares the law to be that in determining the boundary line in this case between lots 7 and 8, in Marty's Woodland addition, if there were visible monuments or stakes fixed on the ground, and said stakes or monuments were visible at the time of the sale of said lots by the owners of said addition, and said lots were sold by the owners of said addition by the said stakes and monuments marking the boundaries of said lots, and the said stakes and monuments can be located and ascertained, they will con-

trol the courses and distances and other descriptions called for by the deed if the line indicated by said monuments and stakes differs from that called for in the deed.

"4. The court declares the law to be that the question in this case is not how would an accruate survey locate the lots in question but how did the original survey and stakes locate them. The only purpose of the evidence of the surveyors who made the recent surveys is to enable the court to locate the original boundary if possible, and not for the purpose of determining where it ought to have been, or where it would have been by an accurate survey. The original starting points and boundaries are questions of fact for the court to find from the evidence, and not only from the evidence of the surveyors, but all the other evidence in the case bearing upon these points."

The court gave declaration of law numbered 1 and 4, but refused to give declaration of law numbered 2 and 3 as asked by the defendant, but after modifying the same (the court's modifications being printed in italics) gave said declarations of law.

Said declarations when modified and given by the court read as follows:

"2. If the court believes from the evidence that Albert Marty and wife when they platted Marty's Woodland addition, caused all the lots and blocks thereof to be surveyed and stakes to be established at the corners of each of said lots and blocks, and when the said Marty and wife sold lots 8 and 9, in block 1, in said addition to William Harris, he pointed out to said Harris the stakes which bound said lots, and said Harris took possession of said lots and made improvements thereon, and built fences thereon in accordance with said stakes, then said Harris obtained title to said lots as bounded by said stakes even although these stakes may not have agreed with the recorded plat of said addition, and the boundary lines between lots 7 and 8, as shown by said stakes, became the true boundary line between said lots, *as between Marty and Harris,*

*and any of their subsequent grantees who knew thereof.* And if the court further finds from the evidence that the improvements complained of by the plaintiff, are on the south side of said boundary line, you will find for the defendants *unless the court further finds that at the time plaintiff purchased lot 8 said stakes were not in existence, and had not been for a long time, and plaintiff had no knowledge or information that they had ever existed and bought his lot only with a reference to the plat mentioned in evidence, and defendant's said fence was not at that time in existence.*

"3. The court declares the law to be that in determining the boundary line in this case between lots 7 and 8, in Marty's Woodland addition, if there were visible monuments or stakes fixed on the ground, and said stakes or monuments were visible at the time of the sale of said lots by the owners of said addition, *and at the time plaintiff purchased his lot and were known to him as such*, and said lots were sold by the owners of said addition by the said stakes and monuments marking the boundaries of said lots, and said stakes and monuments *are in existence* and can be located and ascertained; they will control the courses and distances and other descriptions called for by the deed if the line indicated by said monuments and stakes differs from that called for in the deed."

To which action of the court in modifying said declarations of law numbered 2 and 3, and giving the same as modified, the defendant excepted at the time.

The court under the pleadings, evidence and declarations of law found the issues for the plaintiff; to which finding and action of the court the defendants duly excepted at the time.

After unavailing motion for new trial defendant appeals.

The general rule, if not the universal doctrine is, that where no description of land conveyed by deed other than by the number of the lot or block, in the survey of a tract of land or the plat of a town or an addition thereto, the authentic map of such survey is as much a part of the deed as though set out in it. [Dolde v. Vodicka, 49 Mo. 98; Orrick v. Bower,

29 Mo. 210; Shelton and Heatherly v. Maupin, 16 Mo. 124; West v. Bretelle, 115 Mo. 653; Finelite v. Sinnott, 125 N. Y. 683; Thomas v. Patten, 13 Me. 329; Davis v. Rainsford, 17 Mass. 207.]

In the case at bar no monuments are mentioned in any of the deeds under which the respective parties claim title to the strip of ground in question, so that, the courses and distances, as shown by the original plat to which the deeds all refer as a part of those instruments must govern (Whitehead v. Atchinson, 136 Mo. 485), *unless* there is a conflict between the plat and an actual survey in which case the latter will control, and the reference to the plat may be regarded as surplusage, *provided* the corners and lines established by the survey can be identified. [1 Jones Real Property, sec. 431; O'Farrel v. Harney, 51 Cal. 125; Penry v. Richards, 52 Cal 496; Root v. Cincinnati, 87 Iowa 202.] But in the case in hand there is no conflict between the survey and plat. It is true there was some testimony which tended to show that the corners indicated by the stakes which were originally set out in the addition, and the survey as called for by the plat, were in conflict, but as to whether or not the original stakes were located otherwise than as the corners of the lots indicated by the plat was one of fact for the consideration of the court sitting as a jury, and its finding was adverse to defendant's contention.

As was said by MACFARLANE, J., in Whitehead v. Atchison, *supra*: "One who purchases a surveyed lot, or tract of land, without notice of the actual boundary, or corners, has the right to rely upon what appears from the original survey, or plat thereof, and is not bound by monuments which do not appear therefrom to have been placed upon the land." But the rule is otherwise, if the plat or survey calls for monuments, for then the plat will be governed by them, if their location can be definitely ascertained, although they may have been removed, destroyed or decayed.

That adjoining landed proprietors may agree upon and

establish a line between them as the dividing line, regardless of the fact that they may not know where the true line is according to a plat of the ground theretofore made, if they so desire, may be conceded, but where they are mistaken as to the location of the true line and do not regardless of that fact agree upon another, then the possession or agreement by them with reference to a division line where they are mistaken as to the location of the true line, does not operate as an estoppel against either.    [Houx v. Batteen, 68 Mo. 84; Tamm v. Kellogg, 49 Mo. 118; Lemmon v. Hartsook, 80 Mo. 13; Jacobs v. Moseley, 91 Mo. 457.]

During the trial defendant offered to show by several witnesses that the fence between his lot and plaintiff's was in line with fences on adjoining lots, or on corresponding lots to the north or south, which upon objection of plaintiff was excluded.

Defendant insists that this was error.    But such evidence shed no light upon the questions involved in the case at bar, was immaterial and therefore properly excluded.

Fairfield v. Barrette, 73 Wis. 463, was an action of ejectment and upon the trial plaintiff offered testimony as to how an old fence upon the land would agree with the fence on the division line of a corresponding quarter section north, owned by one Ward, which was excluded, and on appeal it was held that the evidence was properly excluded upon the ground of its being immaterial.

The same rule is announced in Fuller v. Worth, 91 Wis. 406.

It is also argued that the court committed error in modifying the second and third declarations of law asked by defendant, and that "as modified they are neither good as general propositions of law, nor as applicable to the facts in this case."

We think it clear both upon reason and authority, that when Marty and wife platted Marty's addition, and caused all

the lots and blocks thereof to be surveyed and stakes to be established at the corners of each of said lots and blocks, and when they sold lots eight and nine in block one in said addition to William Harris and pointed out to him the stakes at the corners of the lots which he purchased, and he took possession of the lots, made improvements thereon, and built fences thereon in accordance with said stakes, said Harris became the owner of said lots as bounded by said stakes even though the stakes may not have agreed with the recorded plat of said addition, and the boundary lines between lots seven and eight as shown by said stakes, became the true boundary line between said lots, as between Marty and Harris, and any of their subsequent grantees who had knowledge thereof, but as to purchasers without notice of such agreement, or that said stakes ever existed, they were in no way effected thereby.   And this is the theory upon which these instructions were predicated and, was, we think, clearly the correct one, both as to the law, and the facts.

Our conclusion is that the judgment should be affirmed, and it is so ordered.   *Gantt, P. J.*, concurs; *Sherwood, J.*, absent.