Meredith KLAAR and Lucille Klaar,
Respondents,

v.

Angelo LEMPERIS and Zella M. Lemperis,
Appellants.

No. 45410.

Supreme Court of Missouri,
Division No. 1.

June 10, 1957.

Roy W. McGhee, Piedmont, Roy W. Mc-Ghee, Jr., Greenville, for appellants.

Roberts & Roberts, J. Richard Roberts, Farmington, for respondents.

HOLMAN, Commissioner.

Plaintiffs, Meredith and Lucille Klaar, husband and wife, and defendants, Angelo and Zella M. Lemperis, husband and wife, are the owners of adjoining tracts of land located in Iron County, Missouri. In this action the owners of each tract sought a judgment quieting title, injunctive relief, and damages. A trial before the court (a jury being waived) resulted in a judgment for plaintiffs. Defendants have duly appealed.

On February 4, 1950, plaintiffs purchased from Ernest Sutton the South Half of the Northwest Quarter of the Northeast Quarter of Section 17, Township 31 North, Range 4 East (and other lands). On July 30, 1954, defendants purchased from George Smith the tract of land described as the North Half of the Northwest Quarter of the Northeast Quarter, known as the Delaney Knight tract, containing 20 acres, more or less. It will be noted that these are adjoining tracts and, in the aggregate, make up the Northwest Quarter of the Northeast Quarter of Section 17. This litigation resulted from a dispute which arose concerning the location of the boundary between the lands claimed by each couple. In this connection it should be stated that if the issue herein simply involved the determination of the boundary between the tracts as they have been heretofore described, we would not have appellate jurisdiction, as title to real estate would not be involved. City of Marshfield v. Haggard, Mo.Sup., 300 S.W.2d 419. However, as we understand the pleadings and evidence, the actual dispute concerns a triangular tract of land (containing perhaps three or four acres) which lies north of Little Sulphur Creek, and that at least a part of this land lies within the tract of which plaintiffs are the record owners. Defendants claim title to that portion of the land by reason of the adverse possession of their predecessors in title. Since defendants sought a decree to the effect that they were the owners of certain land which plaintiffs claimed by reason of their record title, it will be seen that title to real estate is actually involved herein in a jurisdictional sense.

Charley Brewer bought the land now claimed by defendants on February 27, 1946. At that time there was an old rail fence along what appeared to be the south boundary of the tract. This fence ran from northeast to southwest with the meanderings of Little Sulphur Creek to a point, and thence west to the west line of the tract, thus leaving a small parcel of land north of that creek and south of the fence which undisputedly belonged to the tract now owned by plaintiffs. It is the contention of defendants that they own all of the land

that lies north of the line upon which the foregoing fence existed.

■■ Early in February 1950, plaintiffs decided to buy the land they now own but would not do so until a survey was made establishing their lines. Therefore, the then owner, Ernest Sutton, caused the county surveyor, Mr. Rich, to make a survey which purportedly established the boundary corners between the Sutton-Brewer lands. Throughout the trial defendants objected to evidence concerning the result of this survey for the reason that it was not made in accordance with the provisions of the statutes. Admittedly, the survey did not commence with a corner established by the Government, or, if lost, re-established as provided by statute. Sections 60.290, 60.300 RSMo 1949, V.A.M.S. The surveyor testified that he started from a corner he had established in a previous survey. Evidence of such a survey has been held to be of no probative force and, as a general rule, incompetent. Klinhart v. Mueller, Mo.Sup., 166 S.W.2d 519. In this connection it may be noted that Mr. Rich admitted that the corner from which he started was 200 feet north of the section line as shown by a survey made in 1931 by Mr. Scoggin, who was then county surveyor, which, according to the field notes in evidence, appeared (but is not clearly shown) to have started from a re-established Government corner. However, we have concluded that evidence concerning the instant survey was admissible for the limited purpose only of showing a boundary line, which plaintiffs contend was agreed upon by Sutton and Brewer and which they argue is binding upon the defendants herein regardless of the validity of the survey.

Charley Brewer apparently regarded the corners fixed by the Rich Survey as a conclusive establishment of the boundary between the two tracts and accepted it as the dividing line. About a month thereafter Brewer sold his tract to George Smith and pointed out the stakes driven by Mr. Rich as the line between these tracts. In 1952 or 1953 Smith and plaintiffs built a fence along that line. Mr. Smith testified that when he sold his land to defendants in July 1954 he told them the fence was the line. This was denied by Mrs. Lemperis. Defendants moved on their land in July 1954, and the following November began to assert their claim of ownership to the land lying between the new and old fences. That resulted in the filing of the instant suit a few months thereafter.

■ We will first consider the contention of defendants that they acquired title to the disputed land by reason of the adverse possession of their predecessors in title. We agree with that contention. At the outset we note that there is evidence to indicate color of title in defendants and their predecessors as the land has been rather consistently described as the Delaney Knight tract, and the abstract of title shows that when the land was conveyed to said Knight in 1872 a metes and bounds description was used which did not describe the south boundary as a straight east and west line, but described it (from west to east) as, "thence due East to a branch, thence with the meanders of the branch running a northeast direction to the corner of said field fence." While we cannot be certain, this description would appear to indicate a line such as the one followed by the old fence.

It would seem unnecessary to extensively recite the evidence relating to adverse possession. We think it sufficient to state that there is substantial undisputed evidence to the effect that a fence had been maintained along the line which defendants contend is the southern boundary of their tract at least since that land was purchased by Oscar Smith in 1906, and until the fence was partially destroyed by plaintiffs after the Rich Survey. It is apparent that that fence was regarded by all interested parties as the dividing line between the tracts. Throughout that period of time the disputed land was pastured and farmed by the owners of the north tract and used generally

for the purposes for which it was suited. During that period of almost 50 years there is no evidence that any owner of the south (plaintiffs') tract used the land or made any claim to it. Under these circumstances we hold that Oscar Smith acquired title to said land by adverse possession long before he conveyed the same to Charley Brewer in 1946. Sanderson v. McManus, Mo.Sup., 252 S.W.2d 351.

■ In connection with the foregoing we think it should be stated that Charley Brewer's ready acceptance of the line determined by the Rich Survey was a rather strong indication that he was not holding the land adversely. His conduct would seem to indicate that he was not claiming to the old fence but only intended to claim to the true line regardless of where the fence was. However, since title had already been acquired by Oscar Smith, who conveyed it to Brewer, the fact the latter did not continue to hold it adversely, or his subsequent parol abandonment, would neither operate to divest his title nor reinvest it in another, absent adverse possession for the statutory period by one holding adversely to him. Reader v. Williams, Mo.Sup., 216 S.W. 738; 2 C.J.S. Adverse Possession § 208(b), p. 807.

■ In support of the decree of the trial court plaintiffs argue that the boundary line as fixed by the Rich Survey became the true boundary line by reason of a valid parol agreement between Sutton and Brewer which was binding upon their successors in title. While it is clear that Mr. Brewer accepted the results of the Rich Survey, we do not find that there was an agreement between Brewer and Sutton that the Rich line would be the true boundary line. In this regard Mr. Sutton testified as follows:

"Q. Did you and Mr. Brewer, the then owner at that time, agree at that time that was the line between the properties, where the survey ran across there? A. We just didn't talk anything about it.

"Q. Was he along when you made the survey line? A. He was along. He didn't say that he disagreed. If I remember right, he didn't say that he agreed.

"Q. He didn't say anything one way or the other? A. He didn't say anything one way or the other."

Mr. Brewer's testimony on this subject was:

"Q. Now, Mr. Brewer, did you agree that was the dividing line between those two properties? A. I sure did, yes, sir. * * *

"Q. You didn't have any agreement with Mr. Sutton, who owned the Klaar land at the time you owned the Lemperis land, that you would survey it out and whatever the survey was there that you would agree that was the line, did you? A. Not that I remember of, but after the survey, if I remember right, Mr. Edgar Rich, county surveyor, asked us if we were satisfied with the survey and I told him that I was.

"Q. What did Mr. Sutton say, if you recall? A. I just couldn't recall he said anything. * * *

"Q. If you had known that the survey as made was not on the true line, would it have made any difference to you? A. I guess it probably would, but I took it it was the true line."

While we recognize that the attorney used the word "agree" in one of the questions to which Brewer gave an affirmative answer, we nevertheless conclude from all of the testimony that there was no agreement (parol contract) between Sutton and Brewer that the Rich line would be the boundary between the properties.

■ Moreover, even if we should assume that Sutton and Brewer agreed to the division line, we do not think such would have been valid and binding under

the circumstances of this case. In Jacobs v. Moseley, 91 Mo. 457, 461, 4 S.W. 135, 137, this court stated: "Where there is a dispute as to the true division line between adjoining proprietors, or the line is uncertain, and they are both ignorant as to the true location, and they fix and agree upon a permanent boundary line, and take possession accordingly, the agreement is binding on them, and those claiming under them." In the instant case there does not appear to have been any dispute or uncertainty regarding the location of the boundary line between these two tracts during the entire period of almost 50 years that the old fence had been maintained. No dispute or uncertainty as to the boundary line existed between Sutton and Brewer. The survey was made for the sole purpose of satisfying Mrs. Klaar.

Any agreement that may have been made after the Rich Survey was obviously entered into under the mutual mistake that that survey had disclosed the true line. Actually, as we have indicated, that survey was not admissible for the purpose of showing the division line between these tracts. As stated in 11 C.J.S. Boundaries § 64(b), p. 637, "where the line is capable of ascertainment by measurement and survey and the parties agree on a line so measured or surveyed, not as a compromise as to an uncertain boundary but to reproduce the true line, and they proceed under a mutual mistake that it is the true line, the line established is not binding and the agreement may be invalidated * * *." See also, McKinney v. Doane, 155 Mo. 287, 56 S.W. 304, Tidwell v. Waldrup, 347 Mo. 1028, 151 S.W.2d 1092, and Knowlton v. Smith, 36 Mo. 507. We rule that there was no valid parol agreement establishing the Rich Survey line as the boundary between these tracts.

■ The final point made by plaintiffs is that defendants are estopped from claiming any land south of the Rich Survey line since that line was clearly marked and pointed out to them at the time they purchased the land. Although denied by Mrs. Lamperis, we will, for the purpose of the consideration of this contention, assume the truth of the fact stated. Plaintiffs have not cited any Missouri cases in support of this contention and our research has not disclosed any. They rely upon the cases of Jones v. Stearns, 202 Ky. 598, 260 S.W. 373, and Light v. McHugh, 28 Wash.2d 326, 183 P.2d 470. Those cases tend to support plaintiffs' claim upon the factual situations therein disclosed. However, we are unable to see any basis for invoking an equitable estoppel against defendants in the situation here presented.

"It is an essential element of equitable estoppel that the person asserting the estoppel shall have changed his position for the worse in reliance upon representations or conduct of the person sought to be estopped. Sutorius v. Mayor, supra [350 Mo. 1235, 170 S.W.2d 387, 171 S.W. 2d 69]; Prouse v. Schmidt, supra, Mo., 156 S.W.2d 919, 921. To work an equitable estoppel, the person claiming the benefit of the estoppel must have been misled into such action that he will suffer injury if the estoppel is not declared. State ex rel. Moss v. Hamilton, 303 Mo. 302, 260 S.W. 466, 470; Missouri Cattle Loan Co. v. Great Southern Life Ins. Co., 330 Mo. 988, 52 S.W.2d 1, 11. 'No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts.' Sutton v. Dameron, 100 Mo. 141, 151, 13 S.W. 497." Emery v. Brown Shoe Company, Mo.Sup., 287 S. W.2d 761, 767. It is obvious that plaintiffs were not misled or injured by the fact that defendants, when they purchased their tract, may have thought that the Rich line was the true boundary line. Plaintiffs had already purchased their land and built the fence in reliance upon the illegal Rich Survey. There is no indication that they even relied upon the alleged agreement or acquiescence of Brewer. In this situation defendants are not estopped to assert that they own land located south of the line fixed by the Rich Survey.

The judgment is reversed and the cause remanded with directions to the trial court to set aside the judgment for plaintiffs and enter a judgment for defendants in accordance with the views herein expressed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.